Argument for Appellant.

[Filed June 24, 1891.]

# DANIEL SIMMONS v. W. H. WINTERS.

WATERCOURSE—SURFACE WATER.—A watercourse is a stream of water usually flowing in a particular direction with well-defined channels and banks, but the water need not flow continuously, as the channel may sometimes be dry; but this does not include water descending from the hills without any definite channel only in times of melting snow and ice.

CHANNEL.—Where water, owing to the hilly or mountainous configuration of the country, accumulates in large quantities from rains and melting snow, and at regular seasons descends through gullies or ravines upon the lands below, and in its onward flow cuts out through the soil a well-defined channel, which bears the unmistakable impress of the frequent action of running water, and through which it has flowed from time immemorial during such seasons, such a stream is to be considered a watercourse and governed by the same rules.

APPROPRIATION OF WATER.—To make a valid appropriation of water, there must be some actual beneficial purpose existing at the time or contemplated in the future as the object for which the water is utilized. The needs of the purpose for which the appropriation is made is the limit to the amount of water which may be taken.

NATURAL CHANNELS, APPROPRIATION BY.—To effect the appropriation, any gulch, dry ravine, or depression in land may be used as a part of the ditch for conducting the water; and so may the lower portion of the same channel from which the water is taken.

GRANT—APPURTENANCES.—Under the maxim of the law that whoever grants a thing is supposed also tacitly to grant that without which the grant would be of no avail, the right to the use of a ditch and water existing in favor of land conveyed by deed, and without which the land would be practically valueless, passes by such deed as appurtenances.

Wallowa county: JAMES A. FEE, Judge.

Plaintiff appeals. Affirmed.

*T. H. Crawford*, for Appellant.

In order to make a valid appropriation of waters upon the public domain and to obtain the exclusive right to the water thereby, the appropriation must be made with a *bona fide* present design or intention of applying the water to some immediate, useful or beneficial purpose, or in a present *bona fide* contemplation of a future application of it to such purpose by the parties thus appropriating or claiming. (Pomeroy Rip. Rights, § 47; *Weaver* v. *Eureka Lake Co.* 15 Cal. 271; *Davis* v. *Gale*, 32 Cal. 26; 91 Am. Dec. 554; *Orton* v. *Dixon*, 13 Cal. 33;

| | |
|---|---|
| 21 | 35 |
| 21 | 120 |
| 27* | 7 |
| 27* | 15 |
| 21 | 35 |
| 23 | 553 |
| 24 | 311 |
| 27* | 7 |
| 32* | 510 |
| 33* | 570 |
| 21 | 35 |
| 25 | 556 |
| 27* | 7 |
| 37* | 84 |
| 21 | 35 |
| f27 | 6 |
| 21 | 35 |
| d30 | 87 |
| d30 | 9½ |
| 30 | 95 |
| 21 | 35 |
| 31 | 157 |
| 21 | 35 |
| 42 | 56 |
| 42 | 57 |
| 21 | 35 |
| e44 | 201 |
| 44 | 395 |
| 21 | 35 |
| 46 | 115 |

*Gibson* v. *Puchta*, 33 Cal. 310; *Dick* v. *Caldwell*, 14 Nev. 167.)

There must be an actual diversion of the water from its natural channel or bed by means of a ditch, canal or other structure. (Pomeroy Rip. Rights, § 48; *Dalton* v. *Bowker*, 8 Nev. 190.)

One of the essential elements of a valid appropriation of water is the actual application of it to some useful industry within a reasonable time. The *bona fide* intent, physical acts and the application to some useful industry within a reasonable length of time without abandonment are all absolutely essential to a valid appropriation. (Pomeroy Rip. Rights, §§ 49, 50; *Thomas* v. *Guirand*, 6 Colo. 530.)

The first appropriator for the purposes of irrigation of the waters of a stream running through the public lands has the right to insist that the water flowing therein shall during the irrigating season be subject to his reasonable use and enjoyment to the full extent of his original appropriation and beneficial use. To this extent his rights go, but no further; for in subordination to such rights subsequent appropriators or claimants may appropriate the remainder of the water running in said stream. (Pomeroy Rip. Rights, § 64; *Barnes* v. *Sabron*, 10 Nev. 217; *Atchison* v. *Peterson*, 20 Wall. 515; *Kaler* v. *Campbell*, 13 Or. 596.)

The right of any appropriator of water upon the public lands is limited to the amount of his actual appropriation as against subsequent appropriators or claimants, and a change in the use, or an increase in the diversion or use, so as to increase the amount of water diverted or used, to the prejudice of such subsequent parties, will not be permitted. By the appropriator's appropriation and use for several years other persons have a right to suppose that he has thereby defined and determined his own rights as to the amount of water, and to act accordingly. (Pomeroy Rip. Rights, § 79; *Nevada Water Co.* v. *Powell*, 34 Cal. 109; 91 Am. Dec. 685; *Higgins* v. *Barker*, 42 Cal. 233; *Lobdell* v. *Simpson*, 2 Nev. 274.)

Where a party has appropriated water for the purpose of irrigating, the amount of water to which he is entitled, as

against subsequent appropriators or claimants, is limited to the amount actually applied to the purposes of irrigation. (*Simpson* v. *Williams,* 18 Nev. 432.)

Where the natural channel of a stream has been obstructed by natural or artificial causes so that water ceases to flow therein for a few seasons, when such obstructions are removed it does not cease to be a natural stream and watercourse. (*Paige* v. *Rocky Ford Canal etc. Co.* 83 Cal. 84.)

Where the waters of a stream upon the public lands are diverted from their natural channels to another natural channel by artificial means, and the waters in the new channel are put to no beneficial use or purpose by the parties thereafter within a reasonable length of time, the water in the new channel becomes *publici juris,* and the new channel becomes to all intents and purposes the natural channel of the stream. And this is especially true when the water has flowed in the new channel a sufficient length of time and rights in the water have become vested by appropriation or purchase. (*Ford* v. *Whitlock,* 27 Vt. 265; Gould on Waters, 159; *Woodbury* v. *Short,* 17 Vt. 387; 44 Am. Dec. 344; *Tucker* v. *Salem F. M. Co.* 15 Or. 586; *Davis* v. *Gale,* 32 Cal. 26.)

A person who enters into possession of a water right under a mere verbal sale to himself, does not succeed to any rights of privity held by the vendor, so as to obtain the benefit of the prior appropriation. He must date his appropriation as against all other opposing claimants from the time he enters into possession. (*Smith* v. *O'Hara,* 43 Cal. 371; *Lobdell* v. *Hall,* 3 Nev. 507; *Chiatovick* v. *Davis,* 17 Nev. 133; Pomeroy Rip. Rights, 89.)

A neglect to use due diligence in completing the appropriation after the initiatory steps are taken will amount to an abandonment. (*Ophir Silver M. Co.* v. *Carpenter,* 4 Nev. 534.)

*R. Eakin,* for Respondent.

Plaintiff can acquire no right in the water in an artificial ditch by reason alone of its flow for the period of ten years.

(*Green* v. *Carotta*, 72 Cal. 268; *Brown* v. *Mullin*, 65 Cal. 89; *Heintzen* v. *Binninger*, 79 Cal. 5; Gould on Water Courses, §§ 338–40.)

To constitute title by prescription there must be actual use and occupation of it for the period of ten years. The use must be adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge and acquiescencé of the owner. (Wash. on Ease. 131; *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181.)

There is nothing of this character alleged, hence they cannot be permitted to prove it. (*American Co.* v. *Bradford*, 27 Cal. 360.)

Plaintiff could acquire no interest or right in the ditch by settling upon it. It was private property, and plaintiff must allege and prove a right by purchase or prescription. (*Burnham* v. *Freeman*, 11 Colo. 601.)

A use cannot be adverse to another that is no injury to that other. It must be such an invasion of the rights of defendant as will give him a cause of action. (*Alta L. & W. Co.* v. *Hancock*, 85 Cal. 219; 20 Am. St. Rep. 217; Wash. on Ease. 136, 138, and 370; *Huston* v. *Bybee*, 17 Or. 140.)

A permissive use, or a use of water from our ditch, when there is plenty for all, cannot be adverse. (*Cave* v. *Crafts*, 53 Cal. 138; *Feliz* v. *City of Los Angeles*, 58 Cal. 79; *Anaheim W. Co.* v. *Semi T. W. Co.* 64 Cal. 192; *Last Chance W. D. Co.* v. *Heilbrau*, 86 Cal. 3.)

Active enjoyment for more than ten years is not alone adverse. (Gould W. C. §§ 338, 340; *Heintzen* v. *Binninger*, 79 Cal. 5; *Oneto* v. *Restano*, 78 Cal. 376.)

In this case the water is an easement which runs with the land. (*Cave* v. *Crafts*, 53 Cal. 135; *Farmer* v. *Ukiah Water Co.* 56 Cal. 11; *Hungarian H. G. M. Co.* v. *Moses*, 58 Cal. 168.) And a conveyance of the land carries with it the water as an appurtenant. (*Quirk* v. *Falk*, 47 Cal. 453; *Geddis* v. *Parrish*, (Wash.) 21 Pac. Rep. 314.)

LORD, J. — This is a suit in equity, brought by the plaintiff to enjoin the defendant from diverting the waters

of a certain stream commonly known as Sheep Creek ditch, and for damages. The waters of Sheep Creek ditch flow through the lands of the plaintiff and the defendant. The theory upon which the suit is predicated, is that Sheep Creek ditch is an ancient and natural watercourse, with well-defined banks and channels, to the uninterrupted flow of which the plaintiff is entitled as a riparian owner, and by the diversion of which he has already been damaged, and will be irreparably damaged unless the defendant be restrained and enjoined. The facts alleged being denied, the defense set up was prior appropriation of the waters of Little Sheep creek by means of a dam, ditches and dry ravines, or draws, into what is commonly known as Sheep Creek ditch for the purpose of irrigation, stock and domestic uses.

The legal aspect of the case involves an inquiry into (1) what constitutes a watercourse; (2) the quantity of water to which an appropriation is restricted; and (3) the nature of the water right which may pass as appurtenant to the premises conveyed.

Considering these in their order, the inquiry is, what is included within the term watercourse? When there is a living stream of water, within well-defined banks and channel, no matter how limited may be its flow of water, there is no difficulty in determining its character as a watercourse. But when the stream is of that class which periodically or occasionally flows through ravines, gullies, hollows or depressions in land, and by its flow assumes a definite channel, such as indicates the action of running water, there is often some difficulty of distinction.

A watercourse is defined by BIGELOW, J., as " a stream of water usually flowing in a definite channel, having a bed or sides or banks, and usually discharging itself into some other stream or body of water." (*Luther* v. *Winnisimmet Co.* 9 Cush. 174.) It is "a living stream with defined banks and channels, not necessarily running all the time, but fed from other and more permanent sources than mere sur-

face water." (*Jeffers* v. *Jeffers,* 107 N. Y. 650.) The size of the stream is immaterial, but "it must be a stream in fact as distinguished from mere surface drainage occasioned by freshets or other extraordinary causes, but the flow of water water need not be constant." (*Pyle* v. *Richards,* 17 Neb. 182.) It is defined in *Eulrich* v. *Richter,* 37 Wis. 226, to be "a stream of water usually flowing in a certain direction, in a regular channel, with bed and banks. But the water need not flow continually—the channel may be sometimes dry." "There must, however, always be substantial indication of the existence of a stream which is ordinarily and most frequently a moving body of water." (*Weis* v. *City of Madison,* 75 Ind. 253; 39 Am. Rep. 135.)

"A watercourse," says Mr. Angell, "consists of bed, bank and water; yet the water need not flow continually, and there are many watercourses which are sometimes dry. There is, however, a distinction to be taken in law between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which in times of freshets or melting of ice or snow, descend from the hills and inundate the country." (Angell on Watercourses, § 4.) The distinction is, as HAWLEY, C. J., said, "that it is a flowing stream of water — a watercourse as distinguished from water flowing through hollows, gulches or ravines only in times of rain or melting snow." (*Barnes* v. *Sabron,* 10 Nev. 237.) "Such hollows or ravines," said DIXON, C. J., "are not in legal contemplation watercourses." (*Hoyt* v. *City of Hudson,* 27 Wis. 656; 9 Am. Rep. 473.) But, "if the face of the country is such," said BEASLEY, C. J., "as necessarily to collect in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow as to require an outlet, and if such water is regularly discharged through a well-defined channel which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse." (*Earl* v. *De Hart,* 12 N. J. Eq. 280.) "In a broken and bluffy region of country," said

MITCHELL, J., "intersected by long, deep gullies or ravines, surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melting snow rush with the rapidity of a torrent, often attaining the volume of a small river, and usually following a well-defined channel, * * * such streams partake more of the nature of natural streams than of ordinary surface waters, and must at least to a certain extent be governed by the same rules." (*McClure* v. *City of Red Wing*, 28 Minn. 186.)

In *Gibbs* v. *Williams*, 25 Kan. 214; 37 Am. Rep. 241, it is held where surface water from rains and snow in a hilly country seeks its outlet through a gorge or ravines, and by its flow assumes a definite channel with well-defined banks, such as will present to the casual glance the unmistakable evidence of the frequent action of running water, and through which at regular seasons the water flows, and has done so immemorially, such stream is a natural watercouse. In *West* v. *Taylor*, 16 Or. 172, STRAHAN, J., said that "water which has accumulated from spring rains and melting snows, and which has flowed several miles between regular banks of a well-defined watercourse * * * must be deemed a watercourse."

The conclusion to be deduced from these decisions is, that a watercourse is a stream of water usually flowing in a particular direction, with well-defined banks and channels, but that the water need not flow continuously—the channel may sometimes be dry; that the term watercourse does not include water descending from the hills, down the hollows and ravines, without any definite channel, only in times of rain and melting snow, but that where water, owing to the hilly or mountainous configuration of the country accumulates in large quantities from rain and melting snow, and at regular seasons descends through long, deep gullies or ravines upon the lands below, and in its onward flow carves out a distinct and well-defined channel, which even to the casual glance bears the unmistakable impress of the frequent action of running water, and through which it has flowed

from time immemorial—such a stream is to be considered a watercourse and to be governed by the same rules.

In this state, the doctrine of the right to water by prior appropriation for mining or irrigating lands has not been adopted or applied, except as the parties have acquired their rights under the act of congress of 1866. Nor has there been any legislation by the state upon the subject. By the act of congress, the right to water by prior appropriation from the streams upon the public domain was recognized and established. But the appropriation, said Mr. Justice FIELD, "is limited in every case in quantity and quality by the uses for which the appropriation is made." (*Atchison* v. *Peterson,* 20 Wall. 514.) The measure of the right of the first appropriation of the water, as to extent, follows the nature of the appropriation, or the uses for which it is taken. (*Ortman* v. *Dixon,* 13 Cal. 38.) The needs or the purpose for which the appropriation is made, is the limit to the amount of water which may be taken. He can only appropriate so much as he needs for the given purpose. But the appropriation must be made for some beneficial purpose, presently existing or contemplated. Mr. Pomeroy says: "In order to make a valid appropriation of waters upon the public domain, and to obtain an exclusive right to the water thereby, the appropriation must be made with a *bona fide* present intention of applying the water to some immediate useful or beneficial purpose, or in present *bona fide* contemplation of a future application of it to such a purpose, by the parties thus appropriating it." (Pomeroy Rip. Rights, § 47.) There must be some actual beneficial purpose existing at the time, or contemplated in the future, as the object for which the water is utilized. If the amount of the water appropriated is within the given, beneficial purpose for which it was taken—no more than is necessary to irrigate the lands contemplated to be reduced to cultivation as soon as can be reasonably done—although more than can be beneficially used for the present, it is nevertheless a valid appropriation.

While a settler cannot appropriate more water from the public domain than is necessary to irrigate his land, nor any to irrigate lands which he does not intend to cultivate nor own, or hold by possessory title, to the exclusion of subsequent *bona fide* appropriators, yet he is not required, in order to make his appropriation valid, to beneficially use the first years of his settlement the full amount of water appropriated, when such amount is no more than is necessary to irrigate the lands he intends to subject to cultivation. His original appropriation may be made with reference to the amount of water that is needed to irrigate the lands he designs to put into cultivation.

This view is ably sustained in *Barnes* v. *Sabron*, 10 Nev. 243, by HAWLEY, C. J., who, after stating that the plaintiff's rights to the water are not dependent upon the amount beneficially used by him in the first year of his appropriation, proceeds to say: "He was only entitled to as much water within his original appropriation as was necessary to irrigate his land, and was bound under the law to make a reasonable use of it. * * * No person can, by virtue of a prior appropriation, claim or hold any more water than is necessary for the purpose of the appropriation. Reason is the life of the law; and it would be unreasonable and unjust for any person to appropriate all the waters of a creek when it is not necessary to use the same for the purposes of his appropriation. * * * What is a reasonable use depends upon the particular circumstances of each particular case. In this case, the plaintiff should not be confined to the amount of water used by him in 1869 or 1870, nor his rights regulated by the number of acres he then cultivated. He did not cultivate more land because 'his team was poor,' and he 'had no money to hire help.' The object had in view at the time of his diversion of the water must be considered in connection with the actual extent of his appropriation."

As there must be an actual diversion of the water from its natural channel by means of a ditch or other structure

to effect the appropriation, any dry ravine, gulch or hollow in lands may be used for this purpose as a part of the ditch for conducting the water. Not only may these be used by the appropriator as a part of his ditch, but he may use the lower portion of the same bed or natural channel from which the water is taken. (Pom. Rip. Rights, § 48.) It is thus seen, that in order to make a valid appropriation of water, it is required to be made for some beneficial purpose then existing or contemplated, and that the amount of water appropriated must be restricted to the quantity needed for such purpose.

Where there is no express grant or sale of a ditch or water-right mentioned in the deed of the land, other than may be included in the use of the word appurtenances, the question is, whether the interest of the grantor in such ditch and right to the use of the water would be conveyed or pass to the grantee by such deed. The maxim of the law is, that whoever grants a thing is supposed also tacitly to grant that without which the grant would be of no avail. Where the principal thing is granted, the incident shall pass. (Coke Litt. 152.) A grant of real estate will include whatever the grantor has power to convey, which is reasonably necessary to the enjoyment of the thing granted. (3 Wash. R. Prop. § 627.) By the grant of a mill, or the grant of land with the mill thereon, the waters, flood-gates, and the like, which are of necessary use to the mill, pass as incident to the principal thing granted. (Shep. Touch. 989.) " Nor," says one writer of note, "is the word appurtenances necessary to the conveyance of the water-right in such cases, because the incident goes with the principal thing, and this principle is specially applicable to water privileges in grants." (Angell Watercourses, § 153*a*.) Where the right to the use of a ditch and water exists in favor of land conveyed by deed, and without which the land would be valueless, and constituted perhaps the only inducement for the purchase, they will pass by the deed without the use of the word appurtenances.

The case of *Cave* v. *Crafts*, 53 Cal. 135, is in point here. There, the question involved the use of water for the purpose of irrigation as appurtenant to the lands acquired, and the court says: "The word appurtenances is not necessary to the conveyance of the easement. The general rule of law is, that when a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is, a privilege off and beyond the local boundaries of the lands conveyed." In *Tucker* v. *Jones*, 8 Mont. 225, the plaintiff Tucker only acquired whatever possessory rights and the improvements thereon his grantees, Pierce and Durham, had to the lands. As the deed conveying the lands contained no express grant or sale of the ditch or water-right, except as it was included in the use of the word appurtenances, the question was, whether the interest of Pierce and Durham in the ditch and the right to the use of the waters of Rattlesnake creek were conveyed in the deeds to the lands from those persons to the plaintiff Tucker. The court says: "When Pierce and Durham conveyed their possession of the land with its appurtenances they also conveyed their interest in the ditch and water-right, which was necessary to the cultivation, use and enjoyment of the land, just as certainly and as fully as if they had described it in express terms by the deed itself."

As this phase of the case may be easily disposed of upon the undisputed facts, it will be sufficient to say that the evidence shows that Clark Rowland and Joseph Cox were homestead settlers upon the public domain, to whom in due course of time were issued patents by the government to the lands upon which they had respectively settled in 1877; that the defendant W. H. Winters derives his title to the lands now owned and occupied by him, the same being the lands settled upon by the said Rowland and Cox, by deeds of conveyance from them with the usual covenants and warranty; that before and at the time of such sale and con-

veyance, there were important water-rights connected with such lands and used for the purpose of their irrigation, and without which such lands were of little value, and that at the time of the appropriation of the water for uses specified by them and the defendant, all the lands over and across which it was conveyed were unoccupied public lands of the government.

Upon this state of facts, it is clear, then, that when Rowland and Cox conveyed by their deeds the lands respectively settled upon by them with their appurtenances, they also conveyed their interests respectively in the ditch and water right, which was connected therewith and necessary to the cultivation and enjoyment of such lands, as much so and as certainly as if they had so declared by express terms in their deeds. In such case, within the principle already announced, a grantor conveys by his deed as an appurtenance whatever he has the power to grant, which is practically annexed to the land at the time of the grant, and is necessary to its enjoyment, in the condition of the estate at that time. But the theory upon which the plaintiff has brought his suit for an injunction, and what he is seeking to establish by his evidence, is, that Sheep Creek ditch is an ancient watercourse flowing through his land in two well-defined channels; that it has so continued to flow from time immemorial without interruption or abatement until the spring of 1888, when the defendant diverted and appropriated all of its waters, and that as a riparian owner he has a right to have its waters continue to flow in its channels through his land without interruption or diminution. His own and other testimony of those similarly situated, shows in substance that he purchased the land he now occupies and through which Sheep Creek ditch runs, from the state of Oregon in 1880, and at that time its waters were flowing through his land in well-defined channels, and so continued to flow in about the same amount from year to year, varying some with the season, but at no time less than one thousand inches, until

the spring or summer of 1888, when its diversion and appropriation by the defendant, together with an exceptionally dry season affecting its supply, caused its channels to become partially or almost wholly dry; so much so at least, as to deprive him of water for irrigating his land, stock, and domestic purposes, greatly to his damage, which is variously estimated but by no witness testifying in his behalf, at less than five hundred dollars. His testimony designed to prove that Sheep Creek ditch is an ancient watercourse, and that the waters flowing in its channels are its natural waters as distinguished from waters diverted from Little Sheep creek and turned into Sheep Creek ditch, is derived principally from the opinion of witnesses based on the appearance Sheep Creek ditch presented about the time of his purchase of his land, and subsequent thereto, with some little exception, not of much value for want of particularity and attention at the time to the subject matter now of inquiry. These witnesses, judging from the appearance Sheep Creek ditch then presented, express the opinion that it is a natural watercourse, and that the waters flowing in its channels are its natural waters, with perhaps some little diminution.

At the same time, some of these witnesses testify that the willows and cottonwood growing along its course were very small eight years ago, and that the soil was materially different from that on Prairie creek, not far distant, and which is conceded to be a watercourse, one of them saying that he did not know of any other creek in the whole Wallowa valley that had sod like Sheep Creek ditch, indicating by the recent growth of the willows and the nature of the soil through which Sheep Creek ditch has cut its channels that it is not an ancient watercourse whose waters have been accustomed to flow therein regularly or continuously from time immemorial. The plaintiff and some of his witnesses admit that they knew and understood at the time of his purchase and settlement as well as their own that the grantors of the defendant and others above him on

Sheep Creek ditch claimed to have diverted the waters of Little Sheep creek by means of a dam, ditches, gulches and ravines, or dry draws, into what is now known as Sheep Creek ditch, and to be entitled to the use of its waters by prior appropriation. To better understand the case, we must now turn to the evidence for the defendant, which shows that the grantors of the defendant and three other persons in 1877 settled respectively upon certain lands belonging to the government, which being dry and arid and unproductive without irrigation, for the purpose of securing a supply of water for stock and domestic purposes and the cultivation of their lands, went up to a natural watercourse called Little Sheep creek, built a dam across it, and by digging ditches and using gullies, ravines, or dry draws, as called by various witnesses, they diverted substantially all the waters of that stream, roughly estimated to be about twenty-five hundred inches, which they divided into equal parts among themselves, and caused these waters to flow therein, using as much as they each needed and letting the surplus flow on, and thereby created the stream now known as Sheep Creek ditch.

His evidence also goes to show that these ravines, depressions, or dry draws as called, which they used to convey the waters to their lands, were dry draws, and in which no natural waters were accustomed to flow, but that they were caused by occasional bodies of surface water descending from the hills during times of melting snow and ice; that there is quite a number of such draws between Sheep Creek ditch and Prairie creek, only a mile or two apart, and that they are very similar to such as were used for Sheep Creek ditch, and that owing to the face of the country, it is not possible for Little Sheep creek to have flowed through Sheep Creek ditch. It also tends to show that no willows or shrubbery ever grew along its course until the diversion of the waters had been effected, and that the sod and soil through which it flowed was not such as belonged to or was found along natural watercourses, but that the effect of the

diversion was to make Sheep creek a living stream, cutting out by the force of its waters through sod and soil, except occasional spreads here and there, a definite channel, and discharging its waters into Prairie creek. There were also several other dry draws or ravines between Sheep Creek ditch and Prairie creek, which were only a short distance apart, but these, like those of which Sheep Creek ditch had been partly constructed, were without water or shrubbery, or other characteristics of a natural watercourse, or of the action of water, other than was produced by the mere drainage of surface water from melting snows, showing that the ravines and draws with which Sheep Creek ditch is partly made, were dry and without water, as was testified to by several witnesses, and that it only assumed that character when by dam and ditches connecting with dry draws or ravines, the waters of Little Sheep creek were diverted into them.

The testimony establishing these facts is supported by several witnesses, whose opportunities were such, both before and after the diversion had been effected, and the way and means by which it was accomplished, as to give great value to their testimony especially in the absence of any contradiction or attempt at impeachment. It was after the waters had been turned into Sheep Creek ditch and it had begun to assume the appearance of a natural stream in running through the ravines or draws, that the principal witnesses for the plaintiff express the opinion that it was a natural and ancient watercourse, but much of their testimony in regard to the size of the willows and the character of the sod and soil through which it had cut a well-defined channel to Prairie creek, is but a corroboration of the testimony for the defendant and hardly consistent with the theory of an ancient watercourse. It was because these parties, including the grantors of the defendant, who had constructed Sheep Creek ditch and turned the waters of Little Sheep creek into it, did not have any immediate use for the full amount of water diverted for the cultivation

XXI OR.—4.

of their lands that, after using such amount of it as they needed, they permitted the surplus to flow and to create through the lands lying below a living stream, along which other persons in course of time settled and used the water for irrigating their lands, stock and domestic purposes.

Mr. Rowland, one of the grantors of the defendant, after stating by whom, how and by what means the diversion was effected, says: "The owners (five) used all they each needed, and let the surplus flow on through the ditch to be taken up by the settlers below as they needed it. This was our custom." While Mr. Rowland does not state exactly the full amount of water which was diverted, although one of the original parties, yet it is estimated at twenty-five hundred inches, of which each party was to have five hundred inches, and according to which the defendant claims he was entitled to one thousand inches by his conveyances. As the amount of water needed for irrigation in the first years of the settlement was necessarily small, a large surplus, estimated variously and varying from one to two thousand inches, was permitted to flow, and create the watercourse upon which the plaintiff subsequently settled.

Recognizing the force of this evidence as fatal to the contention that Sheep Creek ditch is a natural and ancient watercourse, and to secure the right to the use of its waters to the extent already appropriated by him, the plaintiff, conceding that it is not a natural and ancient watercourse, claims that as the defendant and others have not appropriated for the irrigation of their lands the amount of water diverted, but permitted the surplus for several years over the amount needed for their domestic and agricultural purposes to flow on and become a watercourse, they have thereby fixed the amount of water necessary for their lands (which is admitted to be one hundred and ten inches appropriated by the grantors of the defendant to which he is entitled by his conveyances), and that the plaintiff and others living below are entitled to appropriate its surplus accustomed to flow through their lands.

The law as already stated is, that no one can by a prior appropriation claim or hold any more water than is necessary for the purposes of his appropriation. The grantors of the defendant, however much they may have diverted, could not have lawfully appropriated any more water than was necessary to irrigate their lands and for stock and domestic purposes. That much they were entitled to use when needed or necessary for the purposes specified, and to that extent it was a valid appropriation of the waters to a beneficial use upon the lands, and that much as an appurtenance the defendant acquired by his conveyances from them and was entitled to use. Beyond the amount of water thereby taken, his rights did not go; he could not waste it, and was only entitled to as much water within his original appropriation as was necessary to irrigate his lands. As the grantors of the defendant and their associates, according to the evidence, had diverted more water into Sheep Creek ditch than they needed, and therefore more than they intended to use or appropriate for irrigation, stock and domestic purposes, they permitted the surplus to flow through the ditch upon the lands of the defendant and others, to be taken up and used by them. How much there was of such surplus, it is difficult to determine, but it amounted to one thousand inches, and at times much more, owing to its use and the season.

The court below found that the amount of water used and appropriated by the defendant and his grantors did not exceed three hundred inches, varying from fifty inches to that amount, as needed for the purposes of the appropriation; but in our judgment four hundred inches would be nearer the amount intended to be appropriated for the uses specified; and as between the parties to this record, but no others, this should be taken as the amount of water that the defendant is entitled to use, leaving the surplus to flow on according to the custom established by his grantors to be appropriated by the settlers below.

It is now claimed that the facts show that the defendant

used or wasted this surplus upon his lands, to the damage and detriment of the rights of the plaintiff acquired in its flow through his land. The evidence indicates without dis-· sent that the season was exceptionally dry, and that the snow in the mountains was scant, seriously affecting the source of Little Sheep creek's supply of water, and by reason thereof less water flowed down the ditch; that those above the defendant used the waters freely, as much as was necessary for the irrigation of their lands within the purposes of their original appropriation, and that these causes combined to use the water in the ditch, leaving little or no surplus to flow on, causing the settlers below to complain, and a litigation to be threatened, which to avoid, they used less water and permitted more to pass through the ditch, except the defendant, who continued to use the amount he claimed that was necessary for the irrigation of his lands, and to which he was entitled within the original appropriation.

While there is some evidence indicating that the defendant used the water freely and perhaps on one or two occasions more than was actually necessary (though this is contradicted) which, it may be admitted, was in excess of the amount he was entitled to use, if more than was actually necessary at the time, although within the original appropriation, yet it was plainly not these acts which caused the ditch and its channel to become dry during all the season, producing the grievances complained of. It was due to the more potential causes of a drought, aided by the other causes. Every one had a short crop those years, for they were years of drought, is the tenor of the evidence. So that if the complaint was framed on this phase of the facts, no case is made upon which relief could be granted by injunction, much less when it is framed upon the grounds of riparian proprietorship of a natural water-course running through his lands from time immemorial, which is a different matter, and governed by different rules of law. In any view, therefore, there is a failure of proofs to justify the exercise of the jurisdiction invoked, which is always applied cautiously,

and only when the right to the matter in question is clearly established, and an injurious interruption of such right ought to be prevented.

The decree must be affirmed; and it is so ordered.