Argued April 2, reversed May 20, 1924.

# J. W. TURVEY v. J. C. KINCAID.

(226 Pac. 219.)

**Waters and Watercourses—No Abuse of Discretion in Permitting Claimant to File Amended Claim of Priority in Absence of Timely Objection.**

1. No abuse of discretion was shown in permitting claimant to file amended claim of priority antedating that of another claimant, in absence of an objection made at that time.

**Waters and Watercourses—Any Means Adopted to Convey Water to Place of Use is Legitimate for Appropriation.**

2. In appropriation of water, any means adopted to convey it to place of use is legitimate for the purpose of appropriation.

**Waters and Watercourses—Evidence Held to Show That Defendant's Predecessor's Attempt to Use Creek Waters was Subsequent to Plaintiff's Predecessor's Appropriation.**

3. Evidence *held* to show that defendant claimant's predecessor's attempt to use waters of a creek for irrigation was subsequent to plaintiff's predecessor's appropriation.

**Waters and Watercourses—That Claimant Received Water Through Ditch of Another or That He Later Took Out Ditch of His Own Held not to Affect Priority of Appropriation.**

4. Where water was being taken from a creek during nonirrigating season for mining purposes only, by means of ditch belonging to W., an appropriation by a homesteader of the creek waters for irrigation was effected, as respects priority over subsequent appropriations, when the homesteader, with the consent of W., diverted during the irrigation season the water of the creek from the W. ditch through a gulch on the homestead, and used it for irrigation purposes; nor was the priority of the homesteader's appropriation affected by the fact that he later took out an independent ditch from the creek practically at a point where the W. ditch was diverted, and used the water during the irrigation season through his own ditch.

**Waters and Watercourses—Homesteader Acquired Rights by Diversion of Water to Tan Vats on Government Land, Thinking the Vats were on His Land.**

5. Where homesteader, claiming all the waters of a creek, diverted such waters to tan vats for use in tanning, believing that the vats were on his homestead, whereas they were on vacant government land, *held*, that he was entitled to count on that diversion in support of his claim of priority of appropriation.

---

2. Appropriation of water, see note in 60 **Am. St. Rep.** 799.

Judgment—Unconditional Dismissal of Water Claimant's Injunction Suit Held Res Adjudicata.

6. Where A and B both claimed waters of a creek by appropriation, and B's suit to enjoin A from using the waters of the creek was dismissed, not "without prejudice," but unconditionally, the decree of dismissal barred B from reasserting, as against A, the same claim to the creek waters in later proceeding before the state water board.

From Jackson: F. M. Calkins, Judge.

Department 1.

REVERSED.

For appellant there was a brief over the names of *Mr. Geo. P. Topping, Mr. A. E. Reames* and *Mr. E. E. Blanchard,* with an oral argument by *Mr. Blanchard.*

For respondent there was a brief over the names of *Mr. H. D. Norton, Mr. Gus Newbury, Mr. James T. Chinnock, Mr. J. D. Wurtsbaugh, Mr. H. K. Hannah* and *Mr. Wm. M. Colvig,* with an oral argument by *Mr. Norton.*

BURNETT, J.—This is a dispute waged before the State Water Board and the Circuit Court of Jackson County over the waters of China Creek, each party claiming all the water. The State Water Board had undertaken to adjudicate the rights to the waters of Rogue River and its tributaries, one of which is China Creek.

1. The appellant Turvey, in the first instance claimed priority from 1878, filing his claim October 4, 1911. On the following day the respondent Kincaid filed a claim with the priority date of 1877. Subsequently, after some testimony had been taken, Turvey obtained leave and, without objection so far as the record shows, filed an amended claim with priority of 1872 or 1873. Considering the remedial nature

of the Water Code and the fact that no objection was made to these amendments, we conclude that their allowance was the legitimate exercise of the judicial function. The claims for water and the priority of appropriation are in the nature of pleadings, the amendment of which presents merely a question of the discretion of the tribunal hearing the matter, and in the absence of objection made at the time, we cannot say that there was an abuse of that discretion.

2-4. The oral testimony is contradictory in a very marked degree and depends upon the recollection of people who are now advanced in age and who were mere children at the time of the occurrences they relate. Those testifying for Turvey appeared to be disinterested while, in the main, those for Kincaid are related to him by blood or marriage. Turvey claims as the successor in interest of James R. Nail who, on May 1, 1873, filed upon the north half of the northeast quarter and the southeast quarter of the northeast quarter of section 32, township 38 south, range 5 west as his homestead. Kincaid claims as successor in interest of James W. Cox who filed on September 18, 1876, on the southeast quarter of the southeast quarter of section 32, the south half of the southwest quarter and the northwest quarter of the southwest quarter of section 33 in the same township and range. This information gleaned from the records of the U. S. Land Office at Roseburg is the only record evidence indicating who was on the ground first. The Nail homestead was upstream from the Cox land. It would be impossible to reconcile the oral testimony of the parties and their witnesses, and space forbids that we enter into a close analysis of the variant statements as an advocate would before a jury. No good purpose, so far as adding to the

sum of judicial knowledge in the state reports would be subserved by such a course. We can only announce our conclusions as reached by a consideration of the weight of the testimony after a careful reading of the record.

When James R. Nail occupied his homestead, he found that one Watts had taken out a ditch from China Creek above the Nail homestead by which he conducted water to some point below for mining purposes only, using it in the winter-time when water was abundant, but not using it during the irrigation period in the late spring and summer. Nail took out of China Creek on his own account, a small ditch which he conducted to some tan vats. In addition to its use in the process of tanning, he afterwards conducted the water farther on and used it for irrigation and ultimately conducted it to his house. Although no survey has been made so far as we discern from the record, we believe from the weight of testimony that these tan vats were located on the southwest quarter of the northeast quarter of section 32 which at that time was vacant public land. It was believed at the time that the tannery was located on Nail's homestead and that was the supposition in that vicinity for several years afterwards. Ultimately Nail's daughter homesteaded that forty-acre subdivision and, for the purposes of this opinion, it will be mentioned as the Emma Nail forty. Turvey took title to that tract from Emma Nail at the same time he bought the J. R. Nail homestead. Soon after his settlement on the homestead Nail obtained permission from Watts to divert water from the Watts ditch during the irrigation season and conducted it for irrigation purposes to and upon the Nail homestead. This continued for about two years when Nail took

out an independent ditch from China Creek practically at the point where the Watts ditch was diverted, and used the water through his own ditch during the irrigation season.

A careful consideration of the testimony and the weight thereof impresses us with the belief that all of Cox's efforts to use the waters of China Creek were subsequent in time to the initiation of Nail's appropriation. Each party claims all the waters of China Creek. The testimony shows that it was all required for the reasonable irrigation of the land in cultivation by whomsoever used. There is no pretense of any tenancy in common, or agreed division of water. There is no basis either in the pleadings or the testimony for rotation in the use of the water as decreed by the trial court.

It is well settled that in the appropriation of water any means adopted to convey it to the place of use is legitimate for the purpose of appropriation. On this principle Nail was acting within his rights when, with the consent of Watts, he diverted water from the Watts ditch through a gulch on the Nail homestead and used it for irrigation purposes. The water to be taken was that of China Creek during the irrigation season when mining operations had been suspended. If he could have persuaded Watts to lay for him a pipe-line free of charge conducting the water, it would still have been Nail's appropriation. The clear design of the transaction was to appropriate the water from China Creek for the use of Nail, and he was entitled to rely upon that arrangement of appropriation as against any subsequent activities of Cox. The methods and appliances which are lawful in making an appropriation are considered in *Simmons* v. *Winters,* 21 Or. 35 (28 Am. St. Rep. 727,

111 Or.—16

27 Pac. 7); *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728), and various other cases following those precedents.

5. Claiming all the water, as he did, and using same, as the testimony shows, the subsequent taking out of an independent ditch by Nail could not affect the case or lessen the priority of his appropriation. If, as claimed, Nail was taking all the water by virtue of his prior appropriation, Cox would neither gain nor lose by a change in the point and manner of diversion on Nail's own land. So far as the diversion by her father of the water on what afterwards became the Emma Nail forty is concerned, he had a right to go upon vacant government land and appropriate and divert water for any useful, lawful purpose. He had at least all the rights of a squatter in that transaction and if his design was to conduct it upon his actual homestead and he pursued that purpose with reasonable diligence, he would be entitled to count on that diversion in support of his priority of appropriation.

6. It also appears in evidence that after Turvey succeeded to the estate of Nail, Kincaid instituted a suit against him to enjoin him from using the waters of China Creek and secured a temporary injunction. Issue was joined in that suit, each party as here claiming the water, and subsequently in open court both parties appearing by their attorneys on October 4, 1906, Kincaid's suit was dismissed by consent. The suit was not dismissed "without prejudice" but was dismissed without condition annexed. The effect of that decree was judicially to determine that Kincaid had no right as against Turvey to interfere with the latter's diversion of the water. Each had asserted his claim in that suit and in the face of that decree, Kincaid had no right to maintain

in this proceeding as against Turvey any claim included in the issues of that case. In fact the present claim of Kincaid is a reassertion of the claim which that decree declared to be baseless. No title to the water is here advanced different from what was asserted by Kincaid in that suit. The decree there effectually bars Kincaid from reasserting the same claim.

The conclusion is that the decree of the Circuit Court must be reversed and one here entered awarding to Turvey the right to divert all of the waters of China Creek at his point of diversion during the irrigation season of each year, for the purposes of irrigation on his land.

REVERSED AND DECREE ENTERED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.