Argued September 13, affirmed October 11, 1973

FLECK ET UX, *Respondents, v.* NEAL ET UX,
*Appellants.*

514 P2d 1101

*L. Charles Purvis,* Toledo, argued the cause for appellants. On the brief were Osterlund & Purvis, Toledo.

*James H. Lewelling,* Newport, argued the cause and filed a brief for respondents.

O'CONNELL, C. J.

This is a suit in which plaintiffs seek damages and an injunction to restrain defendants from interfering with a sewer line and septic tank constructed by plaintiffs. Defendants claim ownership of the tank and ask the court to enjoin plaintiffs from interfering with

their use of it. The trial court held in favor of plaintiffs. Defendants appeal.

The parties own contiguous parcels of land in Block A, Breakers Addition to Depoe Bay, Lincoln County, Oregon. Prior to 1946, Block A was owned by the Sunset Investment Co., Inc. Sunset divided this tract into eight lots and a roadway, each of which was separately described by metes and bounds. Sunset conveyed a described lot together with the use of the roadway, the deed reciting that the roadway was "to be jointly owned and used by the several owners of Block A."[1] In 1961, Sunset purported to convey all property owned by it to Calkins Development Co., Inc. In 1967, Calkins quitclaimed all its right, title and interest in Block A to the defendants.

Plaintiffs acquired their lot from Fred and Pauline Holfert, who had bought from Sunset in 1946; defendants acquired the adjoining lot from Quincy Allen, who had purchased it in 1947. Soon after Allen purchased, Holfert began construction of a restaurant. Believing that he did not have enough room on his lot for toilet facilities, he entered into an oral agreement with Allen under which Holfert was given permission to construct bathrooms on Allen's lot. Allen, who planned to erect a grocery store on his lot, had not yet begun construction. The two men were friends and apparently decided that Holfert would build the toilets and both properties would have the use of them. Holfert built the toilets simultaneously with his restaurant and as part of the building. When Allen subsequently constructed the building on his lot, the building encompassed the room which provided the toilet facilities.

---

[1] One of the eight original conveyances out from Sunset described the roadway as "jointly used" only. The lot conveyed by that deed is not involved in this litigation.

As part of the construction of the restaurant building, Holfert placed a single septic tank under the adjoining roadway. Both the toilets on Allen's land and the kitchen sink in Holfert's restaurant were connected to it. The toilet fixtures and septic tank were installed exclusively at Holfert's expense. Some time later a written agreement was entered into by which Allen leased the toilet rooms to Holfert for a nominal charge, Allen reserving the right to use the facilities. When the lease expired in 1960 Neal, who had by then succeeded to Allen's interest, leased the bathrooms and a storage room to Holfert for five years for $25 per month. This lease was assigned to the Flecks in 1963.[2]

At the expiration of the five-year lease Neal notified Fleck that the lease would not be renewed. Fleck then constructed restrooms inside the restaurant. Neal continued to use the toilets on his property, which caused the septic tank to back up into Fleck's restaurant. Consequently, Fleck disconnected the line leading from Neal's toilets to the septic tank. After a series of incidents during which Neal's line was alternately reconnected and disconnected, this suit was started.

---

[2] The lease contained a provision that "the rights herein granted to the Lessees as to toilet and lavatory facilities shall be subject to the use thereof by the tenants of the remainder of said buildings, which said tenants are Robert Green and Beverly Green.

"Lessees, as a further consideration of the leasing of said premises, agree to maintain the leased premises, together with the facilities and septic tank, being a part of said installations, as hereinafter described. * * * * *

"The said Lessees hereby covenant to surrender the said leased premises at the expiration of this lease, or any extension thereof, to the said Lessors, or their assigns, together with the appurtenances in as good order and condition, reasonable wear and tear thereof excepted, fire and other unavoidable casualties also excepted, as the same are now in, and it shall not be the duty of the said Lessors to make any repairs to said premises during the continuance of this lease."

At trial the defendants asserted two bases of ownership of the septic tank. First, they claimed fee ownership of the roadway under which the septic tank is buried and thus all fixtures attached to it. Alternatively, they allege that their ownership of the septic tank followed from the fact that the tank was an appurtenance to the toilets located on their real property.

In support of the first theory, defendants claimed that the original deeds from Sunset conveyed to the various grantees merely an easement over the roadway, retaining in Sunset the ownership in fee. This, they claimed, was subsequently conveyed by Sunset to Calkins and by Calkins to defendants.

■■ This claim is without merit. We note first that the deeds introduced into evidence respecting the various lots in Block A reveal unexplained breaks in the chains of title of both parties. This makes it impossible to be certain of the interests held by either. Moreover, even ignoring this difficulty, defendants' construction of the original conveyances from Sunset fails to give effect to the language in the deed which recites that the roadway is "to be jointly owned and used" by the several owners of Block A and cannot be accepted.[5] Finally, even accepting their ownership of the roadway, unfettered ownership of the septic tank would not necessarily result.[6]

■ Nor do we find persuasive defendants' second contention that they acquired ownership of the septic tank and sewer line as an "appurtenance" to the toilet facilities on their lot. Defendants do not rest their claim on the theory that they have an appurtenant

[5] See Palmateer et al v. Reid, 121 Or 179, 254 P 359 (1927).
[6] See Comer v. Roberts, 252 Or 189, 448 P2d 543 (1968).

easement in someone else's land; they claim full ownership apparently on the theory that the sewer line and the septic tank became an integral part of their land because the septic tank and connecting sewer line were essential to the use of the toilet facilities on their land.

■■ We know of no doctrine which makes a structure on one person's land a part of neighboring land merely because the structure is connected with the contiguous land. There are circumstances in which the owner of land uses one part of his land for the benefit of another part of his land and thereafter conveys the quasi-dominant part to another thereby creating in the grantee a right in the land retained by his grantor. Thus, in the present case defendants might have had a right to use the sewer line and septic tank if defendants had built the septic tank on land owned by them and thereafter conveyed the land to a grantee while retaining the land upon which the toilet facilities were located.[9] In such a case, the right to use the land conveyed is deemed to have been created by an implied reservation of an interest in the grantor, predicated upon the intention of the parties to the transaction. But in the present case there is no basis for implying the intention to create an interest in defendants. Indeed, the contrary seems to be indicated. At their own expense and to serve only their own purposes, plaintiffs laid the sewer line and constructed the septic tank. There is no conveyance of any kind from which it could be implied that plaintiffs intended to create an interest in defendants. The only conveyances involved in the case were the leases from defendants and their

---

[9] See, for example, Jackson v. Striker, 1 Johns. Cas. 284 (NY 1799); Wiesel v. Smira, 49 RI 246, 142 A 148, 58 ALR 818 (1928); Simmons v. Winters, 21 Or 35, 27 P 7, 28 Am St R 727 (1891). See cases collected at 58 ALR 824 (1928).

predecessors to plaintiffs and their predecessors. These transactions do not furnish the basis for the implication we have mentioned. Quite to the contrary, the five-year lease executed by defendants to plaintiffs indicates that the parties expressly dealt with the problem of defining defendants' interest in the sewer and septic tank, creating in defendants a right to use the toilet facilities and imposing an obligation on plaintiffs to maintain those facilities and the septic tank. We interpret this to mean that defendants were granted an easement in the facilities, including the septic tank for the life of the lease. The lease having terminated, defendants have no further interest in the sewer or tank.

If there is some other theory upon which to predicate ownership in defendants of the sewer line and septic tank, defendants have not presented it and we are unable to think of one ourselves.

Decree affirmed.