[Argued January 31, 1893; decided February 27, 1893.]

## ROWLAND et al. *v.* WILLIAMS et al.

[S. C. 32 Pac. Rep. 402.]

1. ADVERSE POSSESSION — MISTAKE.— An occupancy of land, and the making of permanent and valuable improvements thereon, with the intention on the part of the occupant to claim it as his own, is adverse, although he made the improvements under the mistaken supposition that the tract in controversy was included within the limits of his claim. *Caufield* v. *Clark*, 17 Or. 474, approved.

2. ADVERSE POSSESSION — INTENT.— Adverse possession is founded upon the intent with which the occupant has held possession, and this intent is to be determined by what he has done, not by what he has said.

3. ADVERSE POSSESSION — EVIDENCE — PRESUMPTION.— The *prima facie* right of possession of realty established by the introduction in evidence by plaintiff of the paper title, is overcome by proof that defendants, and those under whom they claim, have been in the open, visible, and notorious possession of the land for more than ten years, and have fenced it and made valuable and permanent improvements thereon, and in all respects treated it as their own, the presumption from such proof being that their entry was one of right, and their claim one of ownership.

Statement of the case.

4. Adverse Possession — Offer to Purchase.— An offer to purchase land from another is usually such a recognition of the title of the latter as will bar the defense of adverse possession, if made before the statute of limitations has fully run; but this will apply only where the occupant is under some obligation to restore the possession.

5. Adverse Possession — Recognition of Another's Title.— The mere fact that one in possession of land claiming it as his own, expressed an intention of making a settlement with another, who also claimed it, and on his death bed requested a friend to aid his children in securing a deed for the land, is not such a recognition of the other's title as will debar the defense of adverse possession, where the parties never met and no offer was ever made to purchase the land.

6. Adverse Possession — Tacking — Evidence.— Continuity is an indispensable element of adverse possession; but several possessions may be tacked together where they can be referred to the original entry. No paper evidence of a transfer of possession is necessary when the holding is under the claim of the first entryman. *Vance* v. *Wood*, 22 Or. 77, approved.

7. Adverse Possession.— An adverse possession is not defeated by the fact that the widow of the original entryman applied to the proper government officers to pre-empt the land in her own right, and also sought by a suit to quiet her title as against another claimant thereof, where the limitation had fully run in favor of the original entryman's estate before any attempt was made by her to acquire the title.

Wasco County : W. L. Bradshaw, Judge.

Suit in equity under section 504, Hill's Code, by Geo. Rowland and J. Barger against Geo. Williams, administrator of the estate of Louisa Goldstein (formerly Louisa Michelbach), deceased, and her children Clara A. Schutz, Chas. F. Michelbach, Louisa Michelbach, Cedelia Michelbach, and William Michelbach, to quiet title to a tract of fifteen acres in the southwest quarter of the southeast quarter of section thirty-three, township two north, range thirteen east, near Dalles City. Decree for defendants, and plaintiffs appeal. Affirmed.

*Dufur & Menefee*, for Appellants.

*Alfred S. Bennett*, for Respondents.

The plaintiffs claim title through a patent from the United States government to the Methodist Episcopal Missionary Society and mesne conveyances from that

society to them.    The defendant, George Williams, is
the duly appointed and qualified administrator of the
estate of Louisa Goldstein, formerly the wife of John
Michelbach, deceased, and the co-defendants are the
children of said Michelbach, and claim title by adverse
possession.    The material facts are as follows:    On July
9, 1875, the Methodist Missionary Society secured a patent
to a section of land in the vicinity of Dalles City, Oregon,
under the act of congress, approved August 14, 1848,
granting lands to such societies.    This patent was issued
by virtue of section 2447 of the revised statutes of the
United States, and operated only as a relinquishment of
the title on the part of the government.    On December
3, 1879, in the circuit court of the United States for the
district of Oregon, in a suit wherein Dalles City was
plaintiff, and the missionary society of the Methodist
Episcopal Church was defendant, the court found that
the defendant voluntarily abandoned the premises de-
scribed in the complaint therein as a missionary station
in September, 1847, and that the premises were not there-
after occupied by the society as a missionary station or
otherwise, and decreed that said defendant received the
patent for the lands therein described as trustee for
Dalles City, and ordered a conveyance to be made in ac-
cordance with that decree.    Like decrees were rendered
in the cases of *J. K. Kelly* v. *The Same*, 6 Saw. 126 (6 Fed.
Rep. 356).    An appeal was taken from these decrees to
the supreme court of the United States, where they were
affirmed:    107 U. S. 336 and 347 (2 Sup. Ct. Rep. 672).
After these decrees were rendered the missionary society
entirely abandoned its claim under the patent to all lands
therein described, as well as to the lands which were em-
braced in the several decrees.    Many persons had bought
certain portions of said patented land from the missionary
society before these decrees were rendered, paying there-
for sums amounting in the aggregate to nearly twenty-five
thousand dollars, which were refunded to the respective
purchasers after these decrees were affirmed.

John Michelbach, the predecessor in interest of these defendants, purchased the land in dispute in March, 1865, from parties who were then in possession, taking a deed therefor. He was in possession of the land when the missionary society received its patent, and also when the said decrees were so affirmed. Prior to the time the patent was issued, he had planted an orchard upon, and had fenced, the tract in dispute, erected a dwelling-house, slaughter-house, several barns and other buildings, and, about the time these suits were concluded, he built a large and expensive house thereon. The value of these improvements was about eight thousand dollars. About 1880 he leased this slaughter-house and several barns to Messrs. Crate Brothers, but retained possession of the dwelling-house, in which he died in 1881 or 1882. Sometime after Michelbach's death, his widow married a Mr. Goldstein, and left the house in charge of her children, who occupied it with the consent of the administrator. Mrs. Goldstein soon separated from her husband, and returned to, and continued to reside with, the children till 1888, when she died, and the defendant Williams was appointed administrator of her estate. The children continued to live in the house a few months after their mother's death, when they moved out, and it was rented by the administrator of the Michelbach estate to one A. N. Varney, who continued to pay rent until about a year before the commencement of this suit, at which time he refused to longer pay rent to the estate, and claimed to hold under plaintiffs. Messrs. Crate Brothers continued to occupy the slaughter-house and barns, paying rent therefor to the administrator of the Michelbach estate for several years, when they transferred their lease to Messrs. Wood Brothers, who continued to occupy the same, paying rent to the administrator until the commencement of this suit, and they now are in possession of the same as tenants of the said estate.

On February 27, 1890, the missionary society, in consideration of five dollars, conveyed to one David Graham,

by quit-claim deed, a tract of land, including the land in dispute; and David Graham. on January 10, 1891, in consideration of one dollar and other valuable considerations, conveyed to plaintiffs, by quit-claim deed, the tract of land in controversy.    Neither the missionary society, nor any one claiming under it, ever had any possession whatever of this tract, except the possession claimed by Varney; and neither the society, nor any one under it, made any claim to the land from the date of said decrees in the United States Court till Graham purchased in 1890. On February 9, 1871, John Michelbach made final proof in the United States Land Office at Oregon City, in support of his preëmption claim for a tract of land adjoining the claim of the missionary society.    Louisa Goldstein, the former widow of Michelbach, on March 15, 1887, made application to preëmpt this tract of land, but her application was denied by the officers of the United States Land Office, for the reason that a portion of the land applied for was embraced in the claim of the missionary society, and therefore not subject to entry.    On August 15, 1887, Mrs. Goldstein commenced a suit in the circuit court of Wasco County against the missionary society to quiet her title to this tract, and on December 6, 1887, she obtained a decree therein.

The issues having been joined in the present suit, the cause was referred to take and report the testimony. The referee made his report to the court, which, after due consideration, prepared and filed findings of fact and conclusions of law, and decreed that the defendants were the owners in fee simple, and entitled to the possession, of the land in controversy, from which decree the plaintiffs appeal.

MOORE, J. (after making the foregoing statement).— Upon this state of facts, appellants contend—*first*, that the decree obtained by Louisa Goldstein against the missionary society is void for want of jurisdiction of the court to render the same; *second*, that the improvements

upon this tract were made under a mistake by Michelbach, who intended them for his preëmption claim, and hence cannot be adverse; *third,* that Michelbach had expressed an intention of making a settlement with the missionary society, and at one time he went to Portland for that purpose, and that on his deathbed he requested a friend to aid his children in securing a deed for this land; *fourth,* that at Michelbach's death the possession, if adverse, had not matured into a title, and his children could take nothing by inheritance. As to the first contention, it is admitted by respondents that there was no service of the summons upon the missionary society in the case of Louisa Goldstein against it, and hence that decree requires no consideration.

1. The record shows that Michelbach had improved a preëmption claim, and lived upon it for the required time; that there was an old house upon it; and since there is no testimony to show where Michelbach lived for some time just prior to making his final proof in 1871, the court must presume that he lived upon his claim. And even if he had made these improvements upon the tract, supposing it was included in his preëmption claim, the occupancy would not be less adverse if there had been an intention to claim the land improved: *Caufield* v. *Clark,* 17 Or. 474 (21 Pac. Rep. 443; 11 Am. St. Rep. 845).

Defendants' right is founded upon the fact that the missionary society has acquiesced in their possession for a period of more than ten years subsequent to the issuance of the patent. When the patent was issued the society had a cause of action against Michelbach founded upon his entry, and the fact that he had entered upon the land by mistake would be no defense to an action by the owner. The right of action is not based upon the mental condition of the occupant, but upon his entry. "If the fact of knowledge or intent were an essential element of disseisin, then the real owner would have no right of action against one who had entered by mistake, until after he was convinced of his mistake, and then,

with knowledge of his error, continued to hold, thus altering the character of his possession, and technically ousting the true owner by a change of mental condition." *Erck* v. *Church*, 87 Tenn. 580 (11 S. W. Rep. 794; 4 L. R. A. 641).

2.   The evidence conclusively shows that John Michelbach entered upon the tract in 1864 or 1865, and from that time to 1881 or 1882, at the time of his death, he had undisputed possession thereof; that his administrator and family, from that time till 1891, continued this possession, and during that time neither the plaintiffs nor their predecessors in interest ever had any possession thereof, or disturbed the possession of the defendants in any portion of the premises.   It is conceded that the statute of limitations did not begin to run until the patent was issued, July 9, 1875, and computing from that time, the defendants have been in possession of the property for a period of fifteen years.   This possession was open, notorious, and exclusive during all that time; but it is claimed that it was not hostile, nor under a claim of ownership.   Adverse possession is founded upon the intent with which the occupant has claimed and held possession.   This intent cannot be determined from what the occupant has said in support of his entry and possession, but must be gathered from what he has done to perfect his claim of ownership.   The burden of proof falls upon the defendants to establish the adverse possession, and this can only be done by showing such acts as usually accompany ownership, which acts are in their very nature hostile to the true owner.   In *Swift* v. *Mulkey*, 14 Or. 64 (12 Pac. Rep. 76), THAYER, J., says:  "The legal title draws after it the possession; and a right of entry is not barred unless there has been a disseisin followed by an actual, open, notorious, and continuous adverse possession for the period of ten years next prior to the commencement of the action.   To be adverse possession it must be occupancy under a claim of ownership, though it need not be under color of title."   The

law presumes every person to be in the legal seisin and possession of the land to which he has a perfect and complete title; and this seisin and possession is coëxtensive with his right, and continues till he is ousted thereof by an actual possession in another, under a claim of right (Angel, Lim. § 384); but if there has been an occupation of the premises for ten years, unexplained, it will be presumed to be made under a claim of right, and adverse, and to authorize the presumption of a grant, unless contradicted or explained: Washburn, Easem. § 90.

3. When a person takes possession of land, puts permanent and substantial improvements thereon, treats it as his own, and continues this occupation for the full period of the statute of limitations, his possession is presumed to be hostile and under a claim of ownership: *Rung* v. *Schoenberger*, 2 Watts, 23 (26 Am. Dec. 95); *Watson* v. *Gregg*, 10 Watts, 289 (36 Am. Dec. 176). Proof of such possession and improvement of real property overcomes the presumption of seisin and possession of the true owner, and the burden of proof is then shifted to the owner, to show that such possession and improvement were under some license, indulgence, or special contract, inconsistent with the claim of right by the other party: Washburn, Easem. § 91. When plaintiffs offered in evidence their paper title, they had made a *prima facie* case, and the law would presume that they were entitled to the possession; but when the defendants proved that they and their ancestor had been in the open, visible, and notorious possession for a period of more than ten years, that they had fenced the tract, made costly and permanent improvements thereon, and had in all things treated it as their own, such evidence would overcome the *prima facie* case made by the plaintiffs, and raise the presumption that their entry had been one of right, and their claim one of ownership; and if the plaintiffs could not show that such entry and holding had been in subordination to their title, or to the title of those under whom they held, then the defendants must prevail.

4.   An offer by a party to purchase land of another is generally such a recognition of the title of the latter as will bar the defense of adverse possession, if made before the statute has fully run.   This is particularly so between vendor and vendee before a conveyance, and between landlord and tenant.   But the rule is now well established that there is no estoppel except when the occupant is under an obligation, express or implied, to restore the possession at some time, or in some event.   A party in possession of lands, acknowledging the title of another, is not estopped from subsequently disclaiming holding under such title, if the original entry was not under the person in whom the title is acknowledged; nor is any other person deriving the possession from such tenant estopped by such acknowledgment.   And a party in possession of lands, recognizing the title of a claimant, and agreeing to purchase, may subsequently deny such title, set up title in himself, and show that his acknowledgment was produced by imposition, or made under a misapprehension of his rights:   Tyler, Eject. § 923.

5.   In the case at bar, there is no evidence tending to show that Michelbach ever saw any agent of the missionary society, or that he ever made any arrangement with him, or offered to buy the property from the society. Michelbach's request to his friend to aid his children in procuring a deed for the property was a natural desire to protect the interests of those whom he was about to leave, rather than any acknowledgment of the title of the missionary society.   Michelbach never was a tenant of the society, nor was there ever a contract by him to purchase the property from the society, and hence he, and those who claim under him, would not be barred by an intention upon his part to recognize the title of the missionary society.

6.   Continuity is an indispensable element of an adverse possession.   If several persons enter on lands at different times, and there is not a privity of estate between them, the several possessions cannot be tacked so

as to make a continuity of possession on which the statute of limitations will operate. But if there is such privity of estate, or of title as that several possessions can and should be referred to the original entry, they are regarded as joined and continuous. The possession of a landlord and his tenant, of an ancestor and his heirs, of a vendor and his vendee, may be tacked to complete the bar of the statute of limitations; there is no break or interruption in the possession, each possessor is connected with his predecessor, and the whole is a continuous possession: *Riggs* v. *Fuller*, 54 Ala. 146; Sedg. & Wait, Tr. Title, § 746. In the case at bar, there has been no break in the possession. From July 9, 1875, for a period of more than ten years, Michelbach, his heirs and the administrator of his estate, have been in possession. This possession has been connected and continuous. The administrator and heirs have referred to the entry of Michelbach to support their possession. No paper evidence of a transfer of possession is necessary when the property is held under the claim of the first entryman: *Crispen* v. *Hannaven*, 50 Mo. 549; *Vance* v. *Wood*, 22 Or. 77 (29 Pac. Rep. 73). Section 1120 of Hill's Code provides that the administrator is entitled to the possession and control of the real property of the deceased, and to receive the rents and profits thereof until the administration is completed. This possession of the administrator is maintained for the purpose of protecting the estate in order to enable him to pay the debts thereof, and to save the property for the heirs. The administrator and heirs have had undisputed possession of the property since the death of Michelbach; they have claimed and held it under the claim of right made by him, and such possession has been continuous, and the privity of the estate between them has been maintained without any paper evidence of the transfer from Michelbach.

7. It is true that Mrs. Goldstein applied to the proper officers to preëmpt this property in her own right, and that she also sought to quiet her title by the decree of

the circuit court; but the statute of limitations had fully run in favor of the estate before any attempt had been made upon her part to acquire title to the property.

The respondents have shown by clear and convincing proof that every element of adverse possession has been fully established by them, and the decree of the court below must be affirmed.