Argued May 3, decided June 14, modified on rehearing August 16, 1910.

### ISON v. STURGILL.

[109 Pac. 579: 110 Pac. 535.]

WATERS AND WATER COURSES—WATER RIGHTS—APPROPRIATION—EFFECT OF NOTICE.

1. The filing of notice of appropriation of waters merely shows an intent to appropriate, and alone does not establish an appropriation nor determine the time or amount thereof; the necessity for the use, actual diversion, and use being essentials to the acquisition of title.

WATERS AND WATER COURSES — WATER RIGHTS — APPROPRIATION.

2. An appropriator of waters acquires no exclusive right to a channel, which carries more water than his appropriation and is used by others.

WATERS AND WATER COURSES—WATER RIGHTS—TERMINATION.

3. Revocation of a license to use a ditch does not terminate the licensee's water rights.

WATERS AND WATER COURSES — WATER RIGHTS — APPROPRIATION.

4. One may make an appropriation of water sufficient for the irrigation of land, the cultivation of which is then in contemplation, and it is not necessary that it all be applied the first year, but it must be put to a beneficial use within a reasonable time, and, when so applied, the appropriation will relate to the date of the diversion or the commencement of the work thereon.

WATERS AND WATER COURSES — WATER RIGHTS — APPROPRIATION.

5. A diversion of water to irrigate an increased area of land cannot relate to an appropriation made several years before, where there was little diligence in cultivating the land under such appropriation.

WATERS AND WATER COURSES—WATER RIGHTS—ADVERSE USER.

6. To establish a right to waters of a stream by adverse user, something more than mere continuous use must be shown, it being essential that such use invade the other's use, and thus give the owner of the prior right a cause of action against such diversion.

WATERS AND WATER COURSES — WATER RIGHTS — ADVERSE USER.

7. The adverse, exclusive, continuous, and uninterrupted use of water from a stream for ten years raises a presumption of title against an unasserted right.

WATERS AND WATER COURSES — WATER RIGHTS — ADVERSE USER — BURDEN OF PROOF.

8. The burden is on claimant of waters by adverse user to show that the use was hostile and asserted, so that the owner might know of the claim.

WATERS AND WATER COURSES—WATER RIGHTS—ADVERSE USER—EVIDENCE—SUFFICIENCY.

9. Evidence *held* insufficient to show exclusive, continuous, and uninterrupted use of waters for ten years, required to give title to water rights by adverse user.

WATERS AND WATER COURSES—WATER RIGHTS—PRIORITIES.

10. A prior appropriator of water is not entitled to use it on lands other than those for whose benefit the appropriation was made.

WATERS AND WATER COURSES—WATER RIGHTS—"INCH."

11. An "inch" in measuring water rights contemplates miners' measure under six-inch pressure.

COSTS—TAXATION—SCOPE OF STATUTE.

12. Section 561, B. & C. Comp., as amended by Laws 1909, p. 110, relating to taxation of costs, applies to law actions only; costs in equity being discretionary with the court under Section 566.

COSTS—TAXATION—APPORTIONMENT.

13. Where, in a suit involving water rights, all the parties were to some extent in the wrong, each party is properly required to pay his own costs.

APPEAL AND ERROR—REVIEW—MATTERS NOT IN ISSUE.

14. Matters on which issue is not tendered will not be considered on appeal.

APPEAL AND ERROR—REVIEW—SCOPE—MATTERS NOT RAISED BELOW.

15. Questions not made in the pleadings or proof, and not considered below, will not be considered on appeal.

From Baker: WILLIAM SMITH, Judge,

Statement by MR. JUSTICE EAKIN.

This is a suit to settle certain water rights. The plaintiffs, Josephine Ison, Edna McDougal, and Virgil S. Ison, claiming a portion of the waters of Pine Creek, in Baker County, Oregon, for the purposes of irrigation, through the Strother Ison ditch, and jointly with plaintiff W. A. Cartmill, through the L. B. & O. P. Ison ditch, bring this suit against William Sturgill and twenty-five or thirty other defendants who claim rights to water from the same creek above plaintiffs. Two suits were originally commenced in August, 1902, against different defendants, as to the diversion by the L. B. & O. P. Ison ditch, and were afterward consolidated and tried as one case. Before decree therein, by order of the court, a supplemental complaint was filed, tendering issues as to the diversion by the Strother Ison ditch, but affecting the same parties. Final decree was rendered on August 6, 1909. Pending the trial many changes occurred in the ownership of the rights of the original defendants, some having transferred their interests to strangers to the suit, and two having died, and their heirs having succeeded to their rights. In some cases substitutions were made. In others they were not. But the cause proceeded as if substitution had been made, and in this opinion it is not necessary to follow these changes, but we will recognize the parties mentioned in the findings and decree as the present parties defendants. A detailed statement of the history of each ditch, the diversion, and the use of the water we deem unnecessary for the purpose of this opinion. The trial court made findings and decree as to all of the parties to the suit in so far as they were affected by the issues made.

The only diversions involved on this appeal are (1) that of Strother Ison, which was made in 1863 for the N. W. ¼ of section 28, township 8 S., range 39 E., and only the amount thereof is controverted, the court finding in plaintiffs' favor for 240 inches, defendants conceding only 30 inches diverted in 1863, 50 inches in 1883, and 100 inches in 1902. (2) The L. B. & O. P. Ison diversion was made in 1864 for tne S. ½ of the S. ½ of section 21 (the O. P. Ison claim), and the N. E. ¼ of the S. W. ¼; N. W. ¼ of S. E. ¼; S. W. ¼ of N. E. ¼; and S. E. ¼ of N. W. ¼ (the W. L. Payton homestead), township 8 S., range 39 E., and subsequently extended to other land. The court found in plaintiffs' favor for 320 inches, as of that date, and 160 inches of date May 23, 1872. Defendants contend they should be limited to an appropriation of 195 inches prior to 1888. (3) The ditches of the defendants appealing are that of Flavius Perkins, claiming 200 inches diverted in 1867, upon the Payton place, viz., N. ½ of S. E. ¼ and S. E. ¼ of N. E. ¼ of section 29. The court found that the use of water thereon had been by permission of Strother Ison, through his ditch, and therefore no right was acquired. (4) Through that known as the Williams ditch defendant Olson and others claiming 500 inches as of date 1868, the court found that there was diverted thereby in 1868, 100 inches, and in 1870, 60 inches, and in 1873, 180 inches. This ditch now covers about three sections of land, situated in sections 7, 18, and 19, township 8 S., range 39 E., and sections 12, 13, 23, and 24, township 8 S., range 38 E. (5) Welch claims the use of water between the 15th day of May and the 10th day of June each year, upon 280 acres in sections 7, 18, township 8 S., range 39 E., under a diversion of the surplus water in said creek made in 1897. The court found that defendant Welch claims only the surplus water after plaintiffs' needs are supplied, and that no right was acquired as against them. Only the

defendants claiming through the ditches just mentioned
appeal.                                             Modified.

For appellants there was a brief over the names of
*Mr. F. M. Saxton* and *Messrs. McColloch & McColloch,*
with oral arguments by *Mr. Saxton* and *Mr. C. C.
McColloch.*

For respondents there was a brief and an oral argu-
ments by *Mr. John L. Rand.*

There was also a brief and an oral argument by *Mr. M.
L. Olmstead, amicus curiae.*

Mr. Justice Eakin delivered the opinion of the court.

Mr. Justice King dissenting.

1. As to the appropriation for the Strother Ison place,
the evidence tends to show that between 1863 and 1866
about 60, possibly 75, acres were cultivated; that there-
after this was not increased much, if any, until 1903;
that the portion plowed was in several tracts, separated
at places by sloughs and willows. A witness states that
one of the sloughs was swampy. Two channels of the
creek run diagonally across the place. It seems, there-
fore, that portions of the place needed no irrigation. Con-
ceding that the land needs a greater quantity of water
per acre than other land on the creek, yet we think 200
inches a sufficient allowance for that place, as prior in
time and right to any other ditch. This diversion was
taken from the south bank of Pine Creek, about four
miles above Ison's land, and turned into a dry channel,
called Spring Creek channel, and back into the creek in
section 29, and thence into the ditch on the north bank.
As to the L. B. & O. P. Ison ditch, the original appropria-
tion was made in 1864 for the O. P. Ison and W. F. Pay-
ton claims of 160 acres each, situated in section 21. Prior
to 1885 not to exceed 120 acres on each claim had been
reduced to cultivation. Contention is made by the plain-

tiffs that water was appropriated and used by them and their predecessors for the irrigation of pasture lands. But the evidence is not convincing that any continuous or practical use of the water was intended or made upon the pasture lands until recent years. From the evidence we think that one inch of water to the acre is sufficient to irrigate it. Therefore the original appropriation through that ditch should be limited to 240 inches. The second appropriation through that ditch was the initiation of a new appropriation. The circuit court found that it applies only to the N. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$, and the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 21. That, also, should be limited to one inch to the acre, viz., 80 inches. At the time of this diversion, a notice thereof was filed in the county clerk's office, claiming 350 inches. The filing of the notice of appropriation did not alone establish the appropriation nor determine either the time or amount thereof; but the necessity, the actual diversion, and the use were all essential in acquiring title to the water by prior appropriation. If these existed, title to it was acquired without notice; and, if not, the notice could not give title. Notice shows *prima facie* an intention from the date of its posting to appropriate, and, if followed by diligence in the construction of the ditch and diversion of the water, the right will date from the time of giving the notice.

2. As to the diversion for the defendant Flavius Perkins' place, there is no question but that water was used on this place for irrigation in 1868 by W. F. Payton, who first settled upon it, both on the south side of South Pine Creek in a ditch with a carrying capacity of 50 or 75 inches, and on the north side through the Strother Ison ditch; the amount of land irrigated being about 20 or 30 acres. This was not increased much until after Payton's death in 1874, when 20 acres additional were reduced to cultivation, and in 1889 it was increased to about 100

acres. The principal controversy is as to whether Perkins acquired a right to the water so used. Plaintiffs contend that he, having only used it through the Strother Ison ditch, by permission of Ison, acquired no right. This contention might be sustained if he only used water to which Strother Ison had acquired title, but he only acquired title to as much as he needed and used. As to the Spring Creek channel used by Strother Ison as a part of his ditch, it is plain he acquired no exclusive right to it. It carried more water than the Ison appropriation, and was used by the mill people and other settlers, and he acquired no title to the surplus water flowing in it. Payton, it seems, at one time took water from that channel at a point below the lower mill, but his principal diversion from the first was by a ditch which tapped the south channel of Pine Creek, at or near a point where Spring Creek channel entered it. Whether he took the water from Pine Creek or Spring Creek is immaterial, because there was surplus water in both, and we cannot assume that Payton was using water belonging to Strother Ison by his permission. The same is true of the water taken on the north side of Pine Creek. If the Ison ditch was used on that side by Ison's permission, yet Payton had a right to take the water from the creek. If Ison did not need the water and used it, then it was available to the next user.

3. It seems that part of the Ison ditch on the north side of the creek was a natural ravine and much of it on the Payton place, and, like Spring Creek channel, had a much greater capacity than necessary for the Ison appropriation. Even if Payton's use of the Ison ditch was by license and revocable, still a revocation could not terminate his water right. Therefore, we conclude that Payton appropriated in 1868, 50 inches of water from South Pine Creek in these two ditches, and an additional 50 inches in 1889. There is no issue in this suit as to

Perkins' right to use the Ison ditch, but only as to the right to the water.

4. As to the Williams ditch, in the year 1865, R. P. Williams was occupying as a squatter the S. W. ¼ of section 24, and the S. E. ¼ of section 23, township 8 S., range 38 E. At that time he diverted from Pine Creek, near where it crosses the section line between sections 23 and 26, 100 inches of water, and that year and the next used about 50 inches thereof for irrigation on such lands. Thereafter, in 1870, he enlarged the head of the ditch, as defendants contend, to a capacity of 500 inches, but at no time prior to 1888 required or used more than 160 inches as found by the circuit court. In 1873 R. P. Williams and his son, S. P. Williams, who had settled upon the N. ½ of section 24, together with Casper Olson, who was occupying the W. ½ of S. W. ¼ of section 7, and the W. ½ of the N. W. ¼, section 18, township 8 S., range 39 E., and the E. ½ of S. E. ¼, section 12, and the N. ½ of the N. E. ¼ of section 13, township 8 S., range 38 E., and A. Masters, who was occupying the S. E. ¼ of the N. W. ¼, S. ½ of N. E. ¼ and N. ½ of S. E. ¼, section 13, township 8 S., range 38 E., and the N. ½ of S. W. ¼ and S. E. ¼ of N. E. ¼, section 18, township 8 S., range 39 E., extended the said Williams ditch northerly to reach said lands, and they each irrigated a small amount thereof. How much does not definitely appear, or when or how much it was increased, except that it was very little, the whole amount in cultivation not exceeding 250 or 300 acres, until 1888, when it was increased to 150 acres on the Olson and Masters places, and 180 acres on the Williams places (to which had been added the N. E. ¼ of section 23), and all of the N. W. ¼ of section 24, then owned by Shelly. One may make an appropriation of water sufficient for the irrigation of land, the cultivation of which is then in contemplation, and it is not necessary that it all be

applied the first year, but it must be put to a beneficial use within a reasonable time, and, when so applied, the appropriation will relate to the date of the diversion or the commencement of the work thereon.

5. In this case little diligence was shown in reducing the land to cultivation, which was done mostly after parts of the land had passed into other hands, and a diversion made for the increased area of 1888 cannot relate to the original appropriation. In *Cole* v. *Logan,* 24 Or. 304 (33 Pac. 568), and *Hindman* v. *Rizor,* 21 Or. 112 (27 Pac. 13), it is held that water so appropriated must have been utilized within a reasonable time to the purpose for which it was appropriated or the right thereto will be lost, and that ten years is an unreasonable delay; and in *Seaweard* v. *Pacific Livestock Co.,* 49 Or. 157 (88 Pac. 963), five years' delay is unreasonable. The diversion by Olson and Masters and by Williams for the N. ½ of section 24, in 1873, was a new appropriation, and the same is true of that made in 1888. The new appropriation through the Williams ditch in 1868, was 100 inches, and in 1870, 60 inches, all of which was subsequently used upon, and recognized by R. P. and S. W. Williams as appurtenant to, the W. ½ of section 24, and the E. ½ of section 23, while they owned it. In 1875 Olson, Masters, R. P. and S. W. Williams appropriated, through this ditch, 180 inches, and the owners of these lands have agreed among themselves as to their respective rights in said ditch and water. The estimate by the non-expert witnesses as to the quantity of water in a ditch or diversion must always be taken with caution, as few of them have ever measured or witnessed the measuring of running water, or can judge of the effect of the velocity upon the amount of the flow, which has as much to do with the quantity as the dimensions of the ditch. The interest of the witness may tend to exaggerate or minimize in his mind the amount of the flow, or he may be unable to give

due weight to these elements, and the amount of ground irrigated is always an important consideration in determining the amount of water diverted and used. The evidence tends to show that at ordinary stages the creek flows about 1,500 inches of water, while at low stages it does not exceed 700 or 800 inches. The greatest need is probably during the periods of low water in the stream, and at such times the amount contended for by the owners under the Williams ditch would take most of the water in the creek. Also, plaintiffs' ditches, if their contention were conceded, would require the most of it, although it appears that the creek has furnished sufficient water for both these ditches, as well as many other farms, until recent years, indicating that the use of the water has been greatly extended in the last few years.

6. The defendants claiming through the Williams ditch contend that they have acquired title to 500 inches of water through that ditch by adverse user, and that, defendants having shown a continuous use of the water for ten years, the burden is cast upon plaintiffs to show that such use was not an infringement upon their rights. To constitute title to a part of the water from the same stream, something more must be shown than a continuous use of the water by the adverse claimant, as contended by defendants. Such use must be an invasion of the other's use, and thus give the owner of the prior right a cause of action against such diversion. The fact that many appropriators may use part of the water without invading each other's right distinguishes the use of water from a stream under such circumstances from cases of adverse occupation of real estate, or even the diversion of water as against a riparian owner, in both of which cases the occupation or use is an infringement of the rights of the true owner, for which an action will lie. Such is the case of *Oregon Construction Co.* v. *Allen Ditch Co.*, 41 Or. 209, 216 (69 Pac. 455: 93 Am. St. Rep.

701). The same rule is announced in *Bauers* v. *Bull,* 46 Or. 60 (78 Pac. 757), which was the case of an easement for a ditch; *Rowland* v. *Williams,* 23 Or. 515 (32 Pac. 402), which relates to real estate; and *Coventon* v. *Seufert,* 23 Or. 548 (32 Pac. 508), which relates to an easement.

7. But more must be shown in the case of adverse title to water as against a prior appropriator from the same stream, as the latter has no remedy or cause to complain until his use is infringed. One is not called upon to defend or assert his title until his rights are invaded. The adverse use of water from a stream for a period of ten years raises a presumption of title to the same as against a right in any other person, which might have been, but was not, asserted.

8. That is, it must be adverse, hostile to the title of the owner, and the burden is on the adverse claimant to show that it was hostile and asserted in such a way that the owner may know of the claim: *Clarke* v. *Clarke,* 133 Cal. 667 (66 Pac. 10). In *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 181, 183 (22 Pac. 76, 77) it is said:

"Title by prescription is created in such cases only where the conduct of the party who submits to the use by another cannot be accounted for on any other hypothesis than that which raises the presumption of the grant of an easement. The conduct of the party claiming the benefit of the presumption must in all cases have been such in itself as to give the other party the right to complain. The defendants having no right to complain in the first instance, 'we are not driven to the presumption of the grant of an easement to account for why they did not complain.' *Hanson* v. *McCue,* 42 Cal. 310 (10 Am. Rep. 299)."

And in *American Co.* v. *Bradford,* 27 Cal. 360, 366:

"A grant of an estate in lands, whether corporeal or incorporeal, may be presumed from an adverse enjoyment for the period corresponding to the statute of limitations, within which an action might have been maintained

against the person holding and enjoying adversely. But what must be the circumstances under which such presumption may arise? In order that the enjoyment of an easement in another's land may be conclusive of the right claimed, it must have been adverse in the legal sense of the term; that is, the right must have been asserted under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted. The burden of proving this is on the party claiming the easement."

The presumption of the grant of an easement arises because the conduct of the other party in submitting to the use cannot be accounted for on any other theory. The acts of the adverse claimant, however, must have been such that the other party had the right to object, and, if he had no right to complain, then there can be no presumption: *Hanson* v. *McCue,* 42 Cal. 303, 310 (10 Am. Rep. 299). It is said in *North Powder M. Co.* v. *Coughanour,* 34 Or. 9, 22 (54 Pac. 223, 227), that plaintiff, having the right of prior appropriator of sufficient water to operate its mill, was not injured by any other diversion, so long as its demands were supplied." And it is there held that, notwithstanding a use by defendant for ten years, it was not adverse to plaintiffs. In *Britt* v. *Reed,* 42 Or. 76, 80 (70 Pac. 1029, 1030), it is said: "Nor is defendant's claim to the use of the water by adverse possession supported by the record, as there is no testimony showing or tending to show that the use thereof by him in any way injured or deprived the plaintiffs of any substantial right until 1899"—thus placing the burden upon the adverse claimant of showing an invasion of the owner's use. In *Bowman* v. *Bowman,* 35 Or. 279, 283 (57 Pac. 546, 547), it is said:

"No adverse use (of water) can be initiated until the persons possessing the superior use are deprived of its benefits in such a substantial manner as to notify them that their rights are being invaded."

In *Carson* v. *Hayes,* 39 Or. 97 (65 Pac. 814), it is said:

"The law is well established that no right to the use of water can be acquired by prescription unless there has been such an invasion of the rights of the parties against whom it is asserted as would have given them a cause of action therefor."

Almost the same language is used in *Wimer* v. *Simmons,* 27 Or. 18 (39 Pac. 11: 50 Am. St. Rep. 685), and *Huston* v. *Bybee,* 17 Or. 140, 148 (20 Pac. 51, 56: 2 L. R. A. 568). The effect of these cases is that the adverse use is not initiated until the right of the owner is invaded, and therefore the burden is on the adverse claimant to establish such invasion. In other words, the use by an adverse claimant, which may result in title, is not initiated until it is an infringement of the use of the owner of the right, and therefore the use of a certain quantity of water for the statutory period does not, as against other appropriators from the same stream, make a *prima facie* title. If so, we might have many people using water from the same stream, and each would have *prima facie* a title as against the other. In *Construction Co.* v. *Ditch Co.,* 41 Or. 209, 218 (69 Pac. 455, 459: 93 Am. St. Rep. 701), which related only to an adverse use of water as against a riparian owner, it is stated that "the rights of the prior appropriator or riparian owner have been invaded, and he has been deprived of the use of the water, for which he has an action against the trespasser." And throughout the opinion, as well as the authorities cited, it is conceded that as against a prior appropriator there must be an invasion of his right, in order to "raise a presumption of title as against a right in any other person, which might have been but was not asserted." Kinney, Irrigation, Section 294, referring to an adverse title as against a prior appropriator, says:

"In order to establish a right by prescription or adverse use, the acts by which such right is sought to be established must operate as an invasion of the rights of the party against whom it is set up."

Therefore, ten years' use of the water cannot raise a presumption against a prior appropriator that the use is adverse, without the additional showing that the other's right was invaded.

Counsel for defendants rely upon the cases of *Gardner* v. *Wright,* 49 Or. 609, 628 (91 Pac. 286), and *Hough* v. *Porter,* 51 Or. 318, 433 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728), to sustain their contention. It is doubtful if there is anything said in the former case in conflict with what is here decided. At page 628 of 49 Or., (at page 293 of 91 Pac.), it is said that " the adverse possession urged and established as a defense may be defeated * * by proof that such use did not substantially interfere with plaintiffs' rights"—citing *Rowland* v. *Williams,* 23 Or. 515 (32 Pac. 402) ; *Covention* v. *Seufert,* 23 Or. 548 (32 Pac. 508), and *Bauers* v. *Bull,* 46 Or. 60 (78 Pac. 757), which we have distinguished above. But the language quoted begins with the statement that the possession is adverse. It is further said: "So far as appears in the record, the plaintiffs and their predecessors in interest at all times, since the open manifestation by Estes of his claim, in 1872, to the waters of Washington Creek, actually needed all the water of this stream for domestic and irrigation purposes. Its use therefore by defendant and his grantor under such conditions constituted an invasion of the rights claimed by plaintiffs and their predecessors," which made Estes' use adverse. In *Hough* v. *Porter,* 51 Or. 433 (98 Pac. 1107), it is said: "This having been established (a diversion for more than ten years), the burden of showing that such user was not a substantial interference with the rights of others was thereby shifted to the parties questioning such claim" —citing *Gardner* v. *Wright.* But, regardless of the language used in those cases, we cannot recognize it as authorizing a presumption that a diversion of water from a stream by one is adverse as to a prior appropriator

from the same stream without any showing that the right of the latter was invaded thereby.

9. However, the adverse title can only arise where the use for ten years has been exclusive, continuous, and uninterrupted, and the evidence tends to show that such was not the case. We are not justified in holding that defendants' use was exclusive or uninterrupted. Evidently the water was frequently taken by plaintiffs; that, when they were short of water, they went to the upper ditches and turned the water down. Also, it appears that for a number of years after the litigation with the Nelson Mining Company, which terminated on August 10, 1891, plaintiffs' use of the water was not interrupted, and they had no trouble in getting what water they wanted. Defendants acquired no title to the water by adverse user. As to the claim of W. J. Welch, we find no error in the finding of the circuit court. His appropriation was not made until 1897 and several of the defendants date their rights about the same time or prior thereto, but this defendant tenders no issue except as to the diversion of plaintiffs, and we are not called upon to settle any conflict between the different defendants as none appears.

10. We adopt from the conclusions of law, made by the circuit court, the following, which we deem a concise statement of an important limitation upon the use of water acquired by prior appropriation, viz.:

"The priorities herein decreed and adjudicated do not confer upon the several owners thereof the right to use the waters thereof on lands other than the tract or tracts for whose benefit such several appropriations were made. The user and owner of the right to use the waters of Pine Creek severally after the tract for which his appropriation was made has received its needed supply of water should not be permitted to divert or use the same upon other lands, as such other use constitutes an increase in his said appropriation, and except when there is an abundant supply of water in said stream for all the parties hereto cannot be permitted.

11. "Hence, for example, and by way of illustration of what is meant by the court in its last former statement, the defendants should be permitted to use any portion or all of the Strother Ison appropriation when it is not in actual use upon the N. W. ¼ of section 28 for needful purposes, when it is needed by them for useful purposes, and said appropriation should then be treated as a part of the flow of water in the natural channel of Pine Creek and should be apportioned to the parties hereto, plaintiffs and defendants, as are the remaining waters thereof, as hereinbefore set forth, and as the equities of said parties are herein made to appear."

See *Williams* v. *Altnow,* 51 Or. 275 (95 Pac. 200: 97 Pac. 539). Throughout this opinion wherever we have used the term "inches" to indicate quantity of water, it is intended to be miner's measure under a six-inch pressure.

The decree of the circuit court will be modified to the extent above indicated, viz., allowing to the Strother Ison ditch, as of date 1863, 200 inches, to the L. B. & O. P. Ison ditch, as of date 1864, 240 inches, and as of date 1872, 80 inches; to the Flavius Perkins land, now owned by J. W. Dickey, as of date 1869, 50 inches, of date 1889, 50 inches. The Williams ditch 100 inches, of date 1868, 60 inches of date 1870, and 180 inches of date 1873. Otherwise the findings and decree of the circuit court will not be disturbed. MODIFIED AND AFFIRMED.

MR. JUSTICE KING dissents.

---

Decided August 16, 1910.

ON MOTION TO MODIFY DECREE AND RECALL MANDATE.

[110 Pac. 535.]

MR. JUSTICE EAKIN delivered the opinion of the court.

12. Motion by defendant Dickey to modify the decree to the extent of granting to this defendant his costs and disbursements under the provisions of Section 561, B. & C. Comp., as amended by Laws 1909, p. 110. That sec-

tion only applies to law actions, while Section 566 leaves the taxation of costs in suits to the discretion of the court.

13. In this case, as in most of the contests over water rights, all the parties were, to some extent, in the wrong, contending for a greater quantity of water than they were entitled to, and the evidence of their rights is always in parol until established by a decree, which is to the advantage of all the parties. The trial court in this case adjudged that neither party should recover costs, although plaintiffs were largely successful at the trial. F. Perkins, to whose interest this defendant succeeded, by his answer contended for 200 inches of water as of date 1867, and 100 inches additional as of date 1870, and admitted the use of that amount, which was an infringement of plaintiffs' rights. In this case we deem it equitable that each party should pay his own costs: *Cole* v. *Logan,* 24 Or. 304, 314 (33 Pac. 568) ; *Hough* v. *Porter,* 51 Or. 318, 326 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728).

14. The appellants, except Dickey, also ask to recall the mandate that the decree wherein it determines that the water in the Strother Ison ditch shall be measured where it enters the N. W. $\frac{1}{4}$ of section 28 may be corrected. The trial court in its findings adjudged the amount of water required upon the land, and added 15 inches for loss by seepage. In determining the allowance for the ditch, we had in mind the amount needed on the land and rendered the decree for measurement at the point where the ditch enters the land under the impression that that was the decree of the lower court. However, in view of the impracticability of measuring the water at the lower end of the ditch, the mandate will be recalled and corrected to increase the water 15 inches in the Strother Ison ditch, allowance for seepage, and decree that it be measured at the point where the water is diverted from the creek in section 29; also, that the

statement that the Williams' ditch is entitled to "60 inches of date 1870" shall be corrected to read "60 inches of date 1871."

Counsel for the owners of the Williams' ditch asks that we make a finding as to the appropriation by the Williams' ditch in 1888. But such a finding cannot determine any rights between plaintiffs and defendants. No such issue is tendered, and such a finding is uncalled for.

15. Plaintiffs ask that the decree be amended to require the measurement of the water in the L. B. & O. P. Ison ditch at the point where it enters the land, because of heavy loss by seepage, between the head of the ditch and the point where it enters the land. But this question is not made in the pleadings nor proof, was not considered by the lower court, and we will not consider it.

The mandate will be recalled, and the two changes above indicated made.

FURTHER MODIFIED ON REHEARING: AFFIRMED.