Argued June 30, decided July 19, rehearing denied October 11, 1910.

## PORTER *v.* PETTENGILL.

[110 Pac. 393.]

WATERS AND WATER COURSES—PUBLIC LANDS—RIGHTS OF SETTLERS.
1. A settler upon the public domain, by diverting water from a natural stream for domestic use, for irrigation or manufacturing purposes, may acquire a right to use the amount so diverted so far as it is put to a beneficial use for actual needs.

WATERS AND WATER COURSES—WATER RIGHTS—PRIORITIES.
2. Water rights acquired from the same stream have priority in the order of the time of diversion.

WATERS AND WATER COURSES—PUBLIC LANDS—RIGHTS OF SETTLERS.
3. A settler on the public domain acquires no right in waters of a stream diverted in excess of his actual use and needs.

WATERS AND WATER COURSES—WATER RIGHTS—NATURE.
4. The right under an appropriation of waters from a stream is appurtenant to the land for which the water is diverted.

WATERS AND WATER COURSES—IRRIGATION WATER RIGHTS—SCOPE.
5. The quantity of water acquired by appropriation for irrigation purposes must be determined by the amount of land irrigated and the quantity of water needed therefor.

WATERS AND WATER COURSES—IRRIGATION WATER RIGHTS—INCREASING ACREAGE—DATE OF APPROPRIATION.
6. Where the acreage irrigated under an appropriation of water has not increased materially for several years, an appropriation for additional acreage dates from the increased diversion.

WATERS AND WATER COURSES—IRRIGATION WATER RIGHTS—PRIORITIES— PLEADING—SUFFICIENCY.
7. A complaint to determine the priority of irrigation water rights is insufficient where it does not definitely describe plaintiff's lands, and does

not show that any particular land needed irrigation, does not specify the amount of water diverted nor the amount needed to the acre, or for any specific land, and does not show how much water plaintiffs' grantors acquired a right to use; an allegation that plaintiffs were entitled to all the water in a creek during the dry season being too indefinite.

From Josephine: HIERO K. HANNA, Judge.

This is a suit by George Porter, James Duncan, Lizzie Williams and H. O. Williams against S. B. Pettengill, S. B. Pettengill as administrator of the estate of Charles Burton, deceased, John Irwin, Eliza Chapman, Charles Bean and Dora Marshall, in regard to water rights for irrigating purposes. From a decree in favor of plaintiffs, defendant Pettengill appeals individually and as administrator.          REVERSED: SUIT DISMISSED.

For appellant there was a brief and an oral argument by *Mr. H. D. Norton.*

*Mr. Robert G. Smith* for defendants not appealing.

For respondents there was a brief and an oral argument by *Mr. George W. Colvig.*

MR. JUSTICE EAKIN delivered the opinion of the court.

This suit is a controversy as to the priority and extent of irrigation water rights. The plaintiffs own land, situated in section 2, 3, 10, 11, and 12, township 34 S., range 6 W., in Josephine County, through which Grave Creek flows in a westerly direction. Defendant Pettengill and the estate of Charles Burton, of which Pettengill is administrator, own 360 acres in Sec. 7, township 34 S., range 5 W., through which also Grave Creek flows. Prior to 1874, plaintiffs' predecessors in interest in said lands diverted water from Grave Creek, for domestic use and irrigation, by means of the Harkness ditch, on the north bank near the east line of section 12. At a point above this diversion, near the east line of defendants' land, a channel diverges from the creek to the south, and returns to it at a point below the head of plaintiffs' ditch; and

defendants have diverted water from such channel for a like use upon their lands. Plaintiffs contend that, originally, and until in 1905 or 1906, when the main channel was filled with debris, the water flowed in the south channel only during high water; and that their diversion takes all the water of the creek during the dry season. Defendants' contention is that from time immemorial the creek has divided at that point; that the two channels have carried an equal amount of water; that defendants are entitled to the water in the south channel, not to exceed 100 inches; and that they concede to plaintiffs all the water in the north channel. This was the principal controversy tried. We find, however, that a decision of this question does not determine the real controversy nor settle the rights of the parties.

1. The facts necessary to entitle either party to water from the stream are not disclosed by the pleadings nor the proof. These essentials have been stated by this court so often that they need only be mentioned, viz.: A settler upon the public domain, by diverting water from a natural stream for domestic use, irrigation, or manufacturing purposes, may acquire a right to the use of the amount of water thus diverted to the extent that it is put to a beneficial use for actual needs.

2. Where several rights are acquired from the same stream, they will have priority in the order of the time of their diversion.

3. If more water is diverted by a settler than is needed for the purpose intended, or is actually used for such need, he acquires a right only to the amount so needed and used. *Simmons* v. *Winter,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727) ; *Wilmer* v. *Simmons,* 27 Or. 1 (30 Pac. 6: 50 Am. St. Rep. 685) ; *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59 (45 Pac. 472: 60 Am. St. Rep. 777) ; *Davis* v. *Chamberlain,* 51 Or. 304 (98 Pac. 154) ; *Williams* v. *Altnow,* 51 Or. 302 (95 Pac. 200: 97 Pac. 539) ; *McPhee* v. *Kelsey,* 44 Or. 201

(74 Pac. 401: 75 Pac. 713) ; *Ison* v. *Sturgill,* 57 Or. 109 (109 Pac. 579.)

4. The water right is appurtenant to the land for which it is diverted: *Simmons* v. *Winter,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727) ; *Williams* v. *Altnow,* 51 Or. 302 (95 Pac. 200: 97 Pac. 539.)

5. The quantity of water acquired by appropriation must be determined by the amount of land irrigated and the quantity of water needed therefor.

6. Applying these principles to the case before us, the complaint alleges that plaintiffs are the owners of the lands in sections 2, 3, 10, 11, and 12, but does not show what part of these sections or how much land they own. The proof shows that the ownership of the land is not joint, but each owns land in severalty. The ditch is owned by them jointly. There is neither proof nor allegation that any particular land needed irrigation; nor is there any allegation as to the amount of water diverted, except that it was all the water in the creek in the dry season. There is no showing as to the amount of water needed to the acre or for any specific land. One witness testifies that the amount required is 10 inches to the acre, but he either misunderstood the question or has no knowledge of what constitutes an inch of water since the proof shows that the soil is rich, sandy loam. And there is nothing before us from which we can determine how much water plaintiffs' grantors acquired a right to use. From the evidence it seems that they did not divert more than 30 or 40 inches, miner's measure, under a six-inch pressure, and it is very doubtful whether they needed more than an inch to the acre on such soil. It appears, also, that, at first, they did not irrigate more than three or four acres, which amount was not increased much prior to 1889 or 1890. There is some evidence tending to show that there were 20 or 30 acres in alfalfa as early as 1874 or 1875, but the witness must have been mistaken in

the year as probably there was no alfalfa in Oregon that early. The preponderance of the evidence is to the effect that some time in 1889 or 1890 there were 20 or 30 acres of alfalfa irrigated; that this acreage was not increased much until several years afterward; and that the enlargement of the ditch and an increased diversion of water therefor constituted a new appropriation from the date thereof. See *Ison* v. *Sturgill*, 57 Or. 109.

7. Defendants' first diversion was not made until about 1881, and, at that time, was not used on more than two or three acres, which quantity was increased later to 10 or 12 acres. There is as much doubt as to the quantity of water needed by defendants as by plaintiffs, but it is a very small amount and is prior to plaintiffs' second appropriation. But these data are insufficient upon which to determine the rights of the parties. We place but little importance upon the division of the waters of the creek near the east side of defendants' land. At the time of plaintiffs' appropriations, evidently the north channel carried as much water during the dry season as was diverted by them, and subsequent changes in the channel could not deprive them of any right they thus acquired.

Plaintiffs' contention that they are entitled to all the water in the creek during the dry season is too indefinite for specific relief. Therefore the decree must be reversed, and the suit dismissed at plaintiffs' costs, without prejudice.    REVERSED: SUIT DISMISSED.