Argued at Pendleton April 20, affirmed June 1, 1926.

## EDWARD JOHNSON v. WARM SPRINGS IRRIGATION DIST. ET AL.

## G. E. STANFIELD v. WARM SPRINGS IRRIGATION DIST ET AL.

(246 Pac. 527.)

**Judgment—Decree, in Proceeding to Confirm Proceedings for Sale of Surplus Waters of Irrigation District, Held Res Judicata of Such Waters not Being Needed for District Purposes (Laws 1925, p. 276, § 6; §§ 7358–7360, Or. L.).**

1. Decree, in special court proceeding, authorized by Laws of 1925, page 276, Section 6, to conform to Sections 7358–7360, Or. L., as far as applicable, to confirm and approve proceedings for sale of surplus waters of an irrigation district authorized by the act, not being appealed from, is, as to matters involved therein, including the fact that such waters were not needed for the purposes of the district, *res judicata*, in suit by parties thereto to enjoin the sale.

**Constitutional Law—Waters and Watercourses—Statute Authorizing Sale of Excess Waters of Irrigation District Does not Interfere With Vested Rights of Land Owners (Laws 1925, p. 276).**

2. Laws of 1925, page 276, authorizing directors of irrigation district to sell only capacity and waters not needed by district, is not unconstitutional, as interfering with vested rights of land owners in the district.

**Waters and Watercourses—Bonds of Irrigation District are not Lien on Property Therein (Laws 1925, p. 276; § 7326, Or. L.).**

3. Bonds of an irrigation district, payable only by annual assessments on the land therein, under Section 7326, Or. L., are not a lien on the property therein, Laws of 1925, page 276, not creating one, but erroneously assuming one has already been created.

---

Waters, 40 Cyc., p. 821, n. 23 New, p. 822, n. 34 New, p. 824, n. 51, 52.

From Malheur: C. H. McCULLOCH, Judge.

Department 2.

These suits, which by stipulation have been consolidated in this court, were instituted to enjoin the sale to the United States government, acting through the Department of the Interior, Bureau of Reclamation, of an alleged undivided one-half interest in and to the Warm Springs reservoir, diversion works and water rights owned by the defendant, Warm Springs Irrigation District. Plaintiff, Johnson, owner and holder of certain bonds issued by the defendant, alleges if the sale is consummated it will result in impairing his security, and that Chapter 185 of the Laws of Oregon for 1925, which purports to authorize such sale, is unconstitutional in that it impairs the obligation of a contract and deprives him of his property without due process of law. Plaintiff, Stanfield, a land owner and assessment payer within the irrigation district, seeks to enjoin this sale for the alleged reason that if it is made, he will be deprived of his *pro rata* share of the waters stored in this reservoir and will not have a sufficient amount to irrigate his lands so that any crops can be produced. Stanfield also asserts that the above legislative act is unconstitutional in that it purports to deprive him of his property without due process of law.

Defendants answered in substance that all of the proceedings had by the irrigation district to make such sale were ratified and confirmed by the Circuit Court for Malheur County, and, since plaintiffs defaulted, although given due notice of such hearing, they are forever barred and estopped from asserting the claims set forth in their complaints and that the matters therein alleged have been adjudicated. Upon refusal of plaintiffs to plead further after demurrers to defendants' further and separate answers were overruled, the suits were dismissed. Plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief and oral argument by *Mr. O. B. Mount.*

For respondents there was a brief and oral argument by *Mr. Ed. R. Coulter.*

*Messrs. Richards & Haga,* on brief, *Amici Curiae,* with an oral argument by *Mr. O. O. Haga.*

BELT, J.—No questions of fact are involved nor do appellants question the regularity of the proceedings had by the irrigation district. Plaintiffs base their appeals, not upon any failure of defendants to comply with the statute, but upon the alleged unconstitutionality of the law which purports to authorize the district so to act.

Chapter 185 of Laws of Oregon for 1925 provides:

"That whenever the board of directors of an irrigation district deem it for the best interests of the district to sell any property owned by the district and *not required for district purposes,* including excess storage or carrying capacity, surplus water or

118 Or.—16

water rights, or to dispose of by contract, lease or sale of any undeveloped hydroelectric power, it shall adopt and enter in the minutes of its proceedings a resolution stating in substance:

"(a) General description of property to be sold.

"(b) The amount of such excess capacity and of surplus water owned by such district, and the amount proposed to be sold.

"(c) That such sale can be made without impairing the security of the outstanding bonds."

Within thirty days after the passing of the above resolution the act requires a petition to be filed with the state engineer setting forth a copy of the resolution and praying that such official "investigate and determine the amount of excess capacity and surplus water which the district may sell." If the state engineer's written report shows there is an excess capacity and surplus water, the board of directors of the district are authorized to sell such amount. If a sale is contemplated it is provided that the board of directors "may then proceed to obtain releases of the lien of all outstanding bonds against the property" it proposes to sell. Releases of such alleged liens are obtained (1) by written consent of the bondholders, or (2) by constructive consent which is effected by publication of a notice, for at least four consecutive weeks in three certain newspapers, "describing the property to be released from the lien of outstanding bonds, and requiring all holders of bonds against said district to present in writing their dissent from or objection to the release of the lien of all bonds against the property to be sold." If such objection or dissent is not filed within ninety days from the date of the first publication of such notice, it is deemed by the statute that the owners of bonds

failing to file such dissent or objection have released the lien of their bonds on the property to be sold. If an objection or dissent is made within the time required by such notice, the board fixes a time for hearing, whereupon it is determined whether such sale can be made without impairing the security of outstanding bonds.

Section 4 of the act provides:

"That all proceeds from the sale of property owned by the district and subject to the lien of outstanding bonds shall be held in a special fund to be applied: First, in the construction or reconstruction of such drainage or other works of the district as may be required by the United States as one of the conditions for the purchase of any such property of the district by the United States; and second, as may be agreed between the district, the holders of such bonds and the irrigation securities commission of the state of Oregon; except that in case any of such funds be applied to bonded indebtedness, such application shall be made to payment on the outstanding bonds as their interests may appear."

Section 5 provides in substance, and so far as material herein, that when there has been a sale of surplus water, the board of directors shall not give the purchaser any prior or superior right in the "water rights, water supplies, reservoir or irrigation works of the district over the rights retained by the district for lands within the district." In other words, when such sale has been made the rights of the purchaser in reference to the matters above mentioned are equal to those of the land owners within the district.

Section 6 provides that all proceedings had by the board of directors, state engineer, or bondholders under this act shall be subject to confirmation and

approval by the courts in conformity to the provisions of Sections 7358, 7359 and 7360, Oregon Laws, so far as applicable thereto.

It appears from defendants' answers, wherein the proceedings are set out at length, that full compliance was had with the statute. The state engineer filed his report, a summary of which disclosed that the reservoir, after increasing its height four feet by the addition of flashboards which the government under its contract proposed to do, would have a capacity of 190,000 acre-feet, capable of irrigating a net area of 55,350 acres, and that one half of the water thus impounded from the flow of Malheur River was surplus water not needed to irrigate the net area of 27,000 acres within the defendant irrigation district. The water thus purchased by the government is to be used in reclaiming about 28,000 acres of arid land in the Vale project. It proposes to buy not in excess of 85,000 acre-feet of water and to pay therefor the sum of $680,000. Payment would be made partly in construction work within the defendant district and the balance in cash.

Special proceedings were instituted in the Circuit Court for Malheur County and notice was duly published requiring all assessment payers and holders of outstanding bonds to appear and show cause, if any they had, why the district should not sell such surplus water. Plaintiffs defaulted, and only one Nancy A. Johnson appeared to contest the proceedings. The Circuit Court, after hearing, entered a decree approving and confirming all proceedings of the district authorizing the sale of surplus water to the government, free and clear of all liens and encumbrances. No appeal has been taken from this decree and time for so doing has long since expired.

1. We think the doctrine of *res adjudicata* applies. Plaintiffs were given due notice that the district proposed to sell water not needed within the district for irrigation purposes, and they remained silent. It is now too late to speak. Section 7360, Or. L., provides:

" * * No contest of any proceeding, matter or thing by this act provided to be had or done by the board of directors or supervisors or by said district, or by the county court, or by any freeholder, legal voter, or assessment payer within the district, shall be had or maintained at any time or in any manner except as herein provided."

As stated in *Weber* v. *Jordan Valley Irr. Dist. et al.*, 109 Or. 426 (220 Pac. 146),

"plaintiff * * had a full and complete opportunity to appear, object and be heard upon all of the matters and things alleged in his complaint herein, but failed to avail himself of that opportunity, and under the express provisions of Section 7360 quoted above, the decree of the court confirming the same is final and conclusive upon him."

If in fact, and it has been so adjudicated, that one half of the reservoir capacity is all that is reasonably needed for irrigating the lands within defendant district, in what way have outstanding bondholders and land owners been injured? Will it be contended that an owner of land within the district is entitled to more water than he needs? Furthermore, the proceeds from the sale must, in accordance with the statute, be expended for district irrigation purposes. We fail to see wherein the security of bondholders will be impaired. These bonds must be paid from assessments levied upon the land within the district. If the government constructs irrigating

ditches and otherwise improves the property belonging to the district, it seems that the ability of the land owners to meet their assessments would be materially increased. Of course, this would not follow if, in fact, the amount of water sold is more than excess capacity, but that question is foreclosed by the finding of the Circuit Court to the contrary, from which no appeal has been taken.

2. The act in question is not unconstitutional. It only purports to authorize a sale of excess capacity and surplus water. It does not undertake to disturb vested or adjudicated water rights. As stated in the title to the act, it is "to provide for the sale by irrigation districts of irrigation works and other property *not needed* by the district, including excess capacity of storage reservoirs * * and surplus water and water rights." It is suggested that under the terms of the contract in question there might be an interference with vested rights of land owners within the district in the event of a water shortage. In the notice and summons published in the confirmation suit reference was made to the contract on file in the office of the secretary of the board of directors of defendant district, so plaintiffs and others similarly interested had opportunity to object to any of its provisions but did not do so. If plaintiffs had presented this question in the confirmation proceedings, we would be much concerned. The Circuit Court, among other things, found:

"that at a very small expense the carrying capacity of said reservoir can be increased to 190,000 acre feet capacity; and that when all of the lands located in Warmsprings Irrigation District are brought under cultivation and irrigation, there will be ample water for the irrigation of the same from said River

and from the water stored in said Reservoir by said Warm Springs Irrigation District, even after the said District shall have sold an undivided half interest in said Reservoir and its storage capacity, water rights, etc., unto the United States as contemplated in the contract in evidence.''

We think this objection to the contract was waived by the plaintiffs and they are in no position now to complain about some highly improbable thing which may occur in the future. At the present time only about 15,000 acres of land are being irrigated, whereas the report of the state engineer shows that the reservoir with the addition of flashboards will have a capacity sufficient to irrigate 27,000 acres of land after the water is diverted for the Vale project.

3. There is no merit in the contention that the bonds issued by the district constitute a special lien upon the property therein. It is true in the act of the legislature under consideration numerous references are made to the ''releases of the liens of all outstanding bonds,'' but in all legislation prior to the act of 1925 it nowhere appears that it was the intention of the legislature to make bonds a special lien on the property of the irrigation district. The act in question does not undertake to create a lien but rather, from the language used, assumes that one has already been created. There is no method provided in the act for the foreclosure of liens. The only method by which bonds are paid is by annual assessments upon the land within the district. (Section 7326, Or. L.) We concede that all of the property owned by the district is liable for the payment of outstanding bonds, but it does not follow that such property is encumbered by special liens as contended

in the instant case. As stated in *Kollock* v. *Barnard,* 116 Or. 694 (242 Pac. 847):

"The bond issue of an irrigation district or municipality is not a mortgage. There is nothing in the statute which gives the bondholder a lien upon the irrigable land included within the district."

In the case above cited it was pointed out that primarily the only source of payment of outstanding bonds was the revenue derived from annual assessments upon land in the district and that *mandamus* would lie to compel such annual levy to be made. When an assessment has been made upon the land within the district for the payment of principal or interest on outstanding bonds the same constitutes a lien upon such property, but it is not the bond itself that is the lien.

The decrees of the trial court in dismissing these suits will be affirmed. Neither party will recover costs and disbursements.            Affirmed.

McBride, C. J., and Bean and Brown, JJ., concur.