Argued at Pendleton May 3; affirmed June 28; rehearing denied
August 1, 1932

MASTERSON ET AL. *v.* KENNARD ET AL.

(12 P. (2d) 560)

*Charles W. Ellis,* of Burns, for appellant.

*Ed. R. Coulter,* of Weiser, Idaho (O. B. Mount, of Baker, on the brief), for respondents.

BEAN, C. J. The facts necessary to be stated, in order to understand the question presented, are about as follows: Plaintiffs are appropriators of the waters

of Malheur river above the Harper ranch. None of
them are members of, or within, or served by the
Warmsprings Irrigation District. Respondent Harry
G. Kennard is the water master, having charge of the
river, the south fork of which heads in Harney county
to the southeast of Crane from whence it flows towards
Riverside in Malheur county, where the middle fork
joins, thence the river flowing on to Juntura, in Mal-
heur county, where the north fork joins, thence flowing
on to the Snake River valley where it empties into the
Snake river near Ontario. At a point on the middle
fork, several miles above where it joins with the south
fork there is a reservoir known as the Warmsprings
reservoir which was constructed by the Warmsprings
Irrigation District, organized under the irrigation laws
of Oregon prior to the year 1915. On April 8, 1914, the
Warmsprings Irrigation District filed an application
with the state engineer of Oregon for a permit to con-
struct the reservoir, which application afterwards
passed to permit and was limited to the storage of
water to be appropriated under a secondary permit.
On February 14, 1916, the district filed its application
for a secondary permit, which afterwards passed to
permit for 540 cubic feet of water per second for irri-
gation, or not to exceed that amount or its equivalent
in case of rotation, 71 second feet of which was to be
used for power purposes only, through a ditch known
as the Gellerman-Froman ditch, in addition to that
diverted for irrigation, said amount being for irriga-
tion, power, domestic use and supplemental supply for
lands having a partial water right. The reservoir was
completed prior to the winter of 1919-1920, and the
first waters stored therein were those of that winter.
Ever since the district has been operating its works as
such a district.

The Nevada Ditch Company is a corporation organized years ago to construct a ditch for irrigation purposes of its members, and prior to the commencement of this cause and after the organization of the irrigation district, it being within said district, it sold all of its rights to the district. All of the works of the Nevada Ditch Company are below the Harper ranch, and that company was decreed a right in the adjudication of the Malheur river for slightly less than 2,000 acres of land, with an 1881 priority. In 1912 the Nevada Ditch Company filed a petition to have the Malheur river and its tributaries adjudicated under the laws of Oregon, and an adjudication was held, and on the 13th of May, 1925, the findings of the water board passed to decree in the circuit court of Malheur county, from which decree no appeal has even been taken. All of the water rights of plaintiffs were adjudicated in those proceedings. The decree in the adjudication proceedings contains the following provision:

"That the water shed of the Malheur River is divided naturally by the mountains into sections, the section known as the Upper River, and the section known as the Lower River. For the purpose of these findings the lower river may be considered that part of the Malheur River below what is known as the Harper Ranch down to the mouth; the upper river includes the Harper Ranch, and all ranches above, including the North, South, and Middle Forks of the Malheur River. That certain of the claimants for the use of water from the Upper River, including the North, South, and Middle Forks thereof, have claimed that by their use of water they have deprived the users of water from the lower part of the river of water to such an extent as to gain a right over them by adverse use. This appears to be true as to those who initiated their water rights prior to 1905, except as to the Nevada Ditch Company, and the water users under the Nevada Ditch

for lands which have the 1881 priority, and in the distribution of water, while the tabulation shows the dates of priority for such distribution, yet, when the water becomes short in the Lower River, these users on the Upper River, who have rights which have been initiated prior to 1905, shall not be required to turn water down for use from the lower river except for the irrigation of the lands under the Nevada Ditch with the 1881 priority.''

All of the rights of plaintiffs, with the exception of one small right of Llona, were initiated prior to 1905. The 1881 right of the Nevada Ditch Company is the oldest right on the river, and, under the provisions of the section of the decree quoted, it is the only right in the lower river which has a priority over the rights in the upper river, having a priority before 1905. Shortly prior to July 12, 1930, the water master ordered the plaintiffs to close their head gates. He shut off their water and forbid them to use any of the natural flow of the Malheur river for irrigation of their lands, as described in the complaint. Hence this suit.

After the year 1925 the Warmsprings Irrigation District not only acquired all of the rights of the Nevada Ditch Company but entered into a contract or contracts with the United States of America, through its Reclamation Service, whereby the district sold to the United States an undivided one-half interest in and to the storage capacity of the reservoir and an equal one-half of all the waters stored in the reservoir each year, the United States desiring the water for a project of its own called the Vale project. The contract between the irrigation district and the Reclamation Service is attached to the complaint as an exhibit.

The plaintiffs complain that shortly prior to the commencement of this suit, large works having been

constructed by the United States on the Vale project for the irrigation of new lands not irrigated at the time or within any of the provisions of the adjudication decree or within said Warmsprings Irrigation District, the water master, under claimed validity of the contract between the United States and the Warmsprings Irrigation District, commenced to permit these new users to take water for irrigation from the Malheur river. Substantially all of these new users are located near the town of Harper, although the contract contemplates many more acres further down the river being brought under irrigation.

In our opinion the gist of the case is embraced within the following paragraph taken from plaintiff's brief:

"Appellants allege and contend that when the Nevada Ditch Company, with its 1881 priority, went into the Warmsprings Irrigation District and became a member of it, and used the stored waters of the Warmsprings District Reservoir, that, at least as far as the plaintiffs are concerned, it lost its 1881 priority as against the plaintiffs, and that regardless of the contract of the Warmsprings District with the United States, the Nevada Ditch priority of 1881 having, for a period of years, been substituted by stored waters from the Reservoir, * * * in lieu of natural flow waters from the river, and having used these stored waters for a period of at least ten consecutive years and ten consecutive irrigating seasons, cannot, merely because the Irrigation District, which has succeeded to the right of the Nevada Ditch Company, has purported to sell stored waters which it has heretofore been using in lieu of its decreed amount and priority, now fall back to the natural flow of the river, as against the rights of the plaintiffs; especially as the laws of Oregon do not permit irrigation districts to make a sale as the Warmsprings Irrigation District has attempted to make; and that the 1881 priority decreed

to the Nevada Ditch Company in and to the natural flow of the Malheur River has been lost by adverse use, non-user, or abandonment.''

It appears that none of the plaintiffs' lands are within the irrigation district. Plaintiffs state in their brief: ''All that the plaintiffs seek to do is to have a declaration, judicially, that the 1881 right of the Nevada Ditch Company, now claimed by the Irrigation District, has been lost, * * *.'' It is not contended by the plaintiffs that the water master, in the performance of his duty, has not correctly distributed the waters to which plaintiffs are entitled, unless the plaintiffs have acquired the water rights of the Nevada Ditch Company with a priority of 1881, or at least that the ditch company had lost the right of that priority.

Plaintiffs contend that, upon the completion of the reservoir, the lands owning the 1881 rights of the Nevada Ditch Company commenced to use the stored waters in lieu of the natural flow under the 1881 right. In considering the demurrer this allegation must be taken as true. It is not claimed by plaintiffs that the Nevada Ditch Company lands, which were awarded a priority of 1881, have not been served with water from the Malheur river during any of the time mentioned, but rather the contention is that the stored waters were used in lieu of the natural flow. It is well understood that the water stored in the reservoir is the product of the surplus flood waters which are preserved from the winter and spring run-off. The only reason suggested for the Nevada Ditch Company lands not using the natural flow of the stream is, then, that there was plenty of the flood or surplus water which has been stored in the reservoir for use upon such lands. It is plain that when there is plenty of water for all water

users during the time of high water, or when the flood surplus water is abundant in a river, there can be no adverse use by any of the water users. Hence, when the plaintiffs used the water of the Malheur river, while the Nevada Ditch Company lands were being served from the storage water, if the water could be divided so as to establish such a fact, there would be no adverse use by the plaintiffs. It would not make any difference whether the Nevada Ditch Company lands were served from the natural flow of the flood or surplus waters or whether such flow was retarded and delayed by being stored in the reservoir and then used. When there is an abundance of water in a stream being used by the different appropriators according to their adjudicated rights, one of such users would not lose or abandon his right by using any particular part of such waters.

We fail to see that it is material whether a particular part of the water taken from the Malheur river for use upon the Nevada Ditch Company lands was that which was taken from the reservoir or whether it was taken from the natural flow. It is evident that the water must have been so mingled that it would be impossible to ascertain whether it was a part of the natural flow or all from the reservoir, if there was a portion of the natural flow and a portion from the reservoir flowing in the river at the same time.

The complaint does not state facts sufficient to show the title by adverse use of water against the Nevada Ditch Company or the Warmsprings Irrigation District continuously for a period of ten years or under a claim of right or to show that such use by the plaintiffs deprived the Nevada Ditch Company or the Warmsprings Irrigation District of the water

awarded to the Nevada Ditch Company with a priority of 1881 by the decree, or that the right had been lost by non-use or abandonment.

■ A prescriptive right to the use of water as against other appropriators is not established merely by showing continuous use for ten years. The burden is on him claiming by prescription to prove that for ten successive years his use has been an invasion of the rights of the other appropriators against whom he claims: *Hough v. Porter,* 51 Or. 318 (95 P. 732, 98 P. 1083, 102 P. 728); *Ison v. Sturgill,* 57 Or. 109 (109 P. 579, 110 P. 535).

■ If there is sufficient water in the stream for all parties, its use cannot be said to be an invasion of the rights of another so as to start the statute of limitations running. It is only when the water becomes so scarce that all parties cannot be supplied and when one appropriator takes water which by priority belongs to another, that there is an adverse use: 2 Kinney on Irrigation (2d Ed.), p. 1883; *North Powder Milling Co. v. Coughanour,* 34 Or. 9 (54 P. 223); *Bowman v. Bowman,* 35 Or. 279 (57 P. 546); *Watts v. Spencer,* 51 Or. 262 (94 P. 39); *Davis v. Chamberlain,* 51 Or. 304 (98 P. 154).

Plaintiffs, by their amended complaint, do not allege that the use by the plaintiffs of this water deprived any of the respondents of the Nevada Ditch Company's 1881 right or any part thereof. It is not alleged that in any of these former years the water master has done anything but his duty which was to distribute the water under the decree. Neither do plaintiffs allege that the only waters that the Nevada Ditch Company land used during this period were stored waters or that the Nevada Ditch Company and the

Warmsprings Irrigation District ceased to use the direct flow of the river under the Nevada Ditch Company's 1881 priority.

As it is not shown that the plaintiffs had obtained the right to the Nevada Ditch Company priority of 1881, they are not in a position to question the sale, or the effect thereof, of an interest in the Warmsprings Irrigation District and flood water rights to the United States government under chapter 185, General Laws of 1925. The proceedings in this sale were considered in *Johnson v. Warm Springs Irrigation District,* 118 Or. 239 (246 P. 527).

Section 47-309, Oregon Code 1930, provides for the appointment of water masters. Section 47-310 defines the duty of the water master, which is, among other things, to divide the water of the natural streams or other sources of supply of his district among the several ditches and reservoirs according to the rights of each respectively, in whole or in part, and to cause to be shut and fastened the head gate of ditches and to regulate the controlling works of the reservoirs in times of scarcity of water as may be necessary by reason of the rights existing from these streams of his district.

Automatic measuring devices were installed at the upper end of the reservoir. A similar device was installed below the same, so that there could be kept an accurate measurement of all water which flowed into the reservoir and all water withdrawn from the reservoir so that the water master had a complete record of water coming in and flowing out of the reservoir and in the various ditches.

The decree of the circuit court of May 13, 1925, adjudicated the rights of the several water users of

the Malheur river and its tributaries. That decree has never been appealed from and has become final. No reason is shown in the complaint for changing that decree. The plaintiffs have not obtained a prescriptive right to the water in question at any time. The Nevada Ditch Company or its successor in interest has the right under the decree of May 13, 1925, to use the natural flow of the water of Malheur river in accordance with its priority of 1881 pursuant to such decree, as long as there is the natural flow or its equivalent to which it is so entitled, and thereafter to use the water stored in the reservoir.

The demurrers to the amended complaint were properly sustained. From the facts stated in the complaint plaintiff could not amend the same so as to state a cause of suit.

Judgment of the trial court is affirmed.

BELT, J., not sitting.

ROSSMAN, J., did not participate in this opinion.